# TEXAS AND PACIFIC RAILWAY COMPANY · *v.* JOHNSON.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 138. Argued December 15, 1893. — Decided January 3, 1894.

A Circuit Court of the United States having appointed a receiver of a railroad in 1885, and the receiver having, during his possession of the property, used a very large amount of the net earnings in improving it, whereby it had been made much more valuable, the court, on the expiration of the receivership, ordered, on the 26th October, 1888, the receiver to transfer

the property with its improvements to the company, and that it should be received by the company, charged with operation liabilities, and subject to judgments rendered or to be rendered in favor of intervenors, and that all claims against the receiver up to October 31, 1888, be presented and prosecuted by intervention prior to February 1, 1889, or be barred and be no charge upon the property. On the 14th of September, 1888, J. brought suit against the receiver in a state court to recover for personal injuries suffered by reason of defects in the road. On the 17th of December, 1888, the complaint was amended by making the railway company a party defendant. The receiver set up his receivership and discharge. The company denied liability for any injury inflicted during the receivership; and among other grounds of defence set up that the plaintiff below was subject to the order of October 26, and must resort to the court which entered it for the collection of his claim; that he could not recover a judgment *in personam;* and that the claim was barred by the terms of the order. The case was dismissed in the trial court as to the receiver, and judgment was given against the company, which judgment was sustained by the highest court of the State on appeal. The latter court held, in its opinion, that the company having received the property under the circumstances described, was bound by the acts of the receiver, and held the property charged with any claim which he ought to have paid out of earnings; that the receiver having been discharged, the property in the hands of the company was released from the custody of the Circuit Court and subject to any claim that might rest against it; that the order of the Circuit Court was not binding on the plaintiff as affecting his right to enforce his claim by suit; that the time in which such action should be commenced was fixed by law and could not be altered by order of court; that, under the act of March 3, 1888, 24 Stat. 552, c. 373, as amended by the act of August 13, 1888, 25 Stat. 433, c. 866, the state court had jurisdiction of the case, and the prosecution of the claim in that court could not be prevented; and that under the circumstances the suit could be maintained against the company. A writ of error was sued out to this court. *Held,*

(1) That the overruling of the defence set up by the company amounted to a decision against the validity of the order of the Circuit Court, or against a claim of 'right or immunity thereunder, which' gave this court jurisdiction under the writ of error;

(2) That the state court had jurisdiction under the acts of Congress above cited to proceed to final judgment in the case, and that it was not necessary to submit that judgment to the Circuit Court;

(3) That after February 1, 1889, those who had not intervened in the suit in the Circuit Court, were remitted to such other remedies as were within their reach;

(4) That as the highest court of the State had held, on other than Federal grounds, that the company was directly liable to the plaintiff below, its judgment should be affirmed.

This was an action commenced by T. R. Johnson in the District Court of Marion County, Texas, September 14, 1888, against John C. Brown, and amended, December 17, 1888, by making the Texas and Pacific Railway Company a party defendant. On January 14, 1889, plaintiff filed his first original amended petition against said defendants, wherein it was alleged that the defendant Brown was on December 15, 1885, duly appointed by the Circuit Court of the United States for the Eastern District of Louisiana receiver of the Texas and Pacific Railway Company and all of its property in the States of Texas and Louisiana; that he qualified as such receiver, December 16, 1885, and entered upon and exercised and performed his duties as such from that date until October 31, 1888, inclusive, and that during that time he operated and managed the property of the defendant corporation in all its parts in said States as a common carrier of freight and passengers, and into and through certain enumerated counties of the State of Texas. The petition, after stating the circumstances of the accident and the ground of liability in that respect, further averred that the receiver was discharged by the court appointing him, October 31, 1888, under an order of October 26, 1888, and that he delivered to the railway company all of its property, consisting of the *corpus* of said railway and all the earnings and income then in his hands as receiver, unexpended, and all the lands belonging thereto and all improvements and betterments which had been added to the property by him.

The provisions of this order requiring that the property should be so delivered subject to the liabilities of the receiver were specifically alleged and their legal effect and that of the acceptance of the property averred; and it was further stated that under the laws of the State plaintiff was entitled to a lien on the property for the satisfaction of his claim. Reference was also made to an order of May 31, 1888, relating to the termination of the receivership, June 1, 1888, and averring that after that date the road was continuously operated by the company.

The plaintiff further alleged that the receiver was originally

appointed at the instigation and by the consent of the railway company and for its benefit, and that the property in his hands from December 16, 1885, to June 1, 1888, inclusive, was operated and managed by him for the benefit of the defendant company and its property as originally intended, and that the property, on June 1, 1888, was redelivered to the defendant corporation, greatly improved in value without any sale or foreclosure and without any third parties acquiring any title thereto or interest therein of any kind. It was finally averred that "the said Brown, as receiver, and under orders and direction of said court and by consent of all parties interested, including defendant company, during the time above mentioned applied all the receipts, earnings, and income of said railway under said receivership, after the payment of current expenses, to the permanent improvement of said property to the betterment thereof, and to the purchase of large and valuable additional property for the use and operation of said road, amounting in the aggregate to the sum of three million dollars, all of which money and property is now in the possession of the defendant company as its own and under the conditions heretofore set out. Wherefore the plaintiff brings this suit and prays for citation to defendants according to law, and on final trial for judgment against the defendant John C. Brown, simply establishing the claim of plaintiff against the receivership under his management, and against the Texas and Pacific Railway Company for his damages, fifty thousand dollars, and to fix upon the said property of the said defendant company in the State of Texas a lien to satisfy the judgment rendered herein, for costs, and such other relief to which plaintiff may be entitled in law or in equity."

The answer of the defendant Brown set up that at the time the plaintiff was injured he was in the exclusive possession of the railway company, as receiver, appointed by the Circuit Court of the United States for the Eastern District of Louisiana in the suit of the Missouri Pacific Railway Company against the Texas and Pacific Railway Company, operating said road under and in conformity to the orders of said court, and he was so in possession and operating said road in Sep-

tember, 1888, at the date this suit was commenced; that on October 26, 1888, the judge of the Circuit Court of the United States for the Eastern District of Louisiana made an order in the cause of *Missouri Pacific Railway Co.* v. *The Texas and Pacific Railway Co.,* discharging defendant as receiver, and said discharge was to take effect and did take effect on October 31, 1888, and the receiver was ordered to deliver and did deliver all the property in his hands as receiver to the railway company, October 31, 1888, in strict compliance with the order of the court; that the railway company took and received the property subject to and charged with all traffic liabilities due to connecting lines and all contracts for which the receiver might be held liable, and also subject to any and all judgments which had been theretofore rendered in favor of intervenors in said cause, as well as such judgments as might thereafter be rendered by the court in favor of intervenors who should file interventions therein prior to February 1, 1889; that he had complied fully with the order of the court, and delivered the property to the railway company and had been fully and finally discharged, and he prayed to be dismissed with his costs.

The railway company demurred on the ground that the petition showed no cause of action against it; and also answered stating that at the time the plaintiff was injured he was not in the employment of this defendant, but of the receiver; that the receiver was discharged October 31, 1888, by an order entered and filed on the 26th of that month in said cause; that on October 31 and November 1, 1888, the receiver delivered to this defendant all the property held by him as receiver, and fully complied with the order of court discharging him, and the railway company received and accepted the property charged with all traffic liabilities due to connecting lines, with all contracts by which the receiver might be held liable, and with the payment of any and all judgments which had theretofore been rendered in favor of intervenors in the case of *Missouri Pacific Railway Co.* v. *The Texas and Pacific Railway Co.,* in the United States court for the Eastern District of Louisiana, as well as such judgments as

might be rendered in favor of intervenors who might intervene in said cause prior to February 1, 1889, and free from any and all other demands or claims. The answer also contained a general denial.

The cause was tried January 18, 1889, and resulted in a judgment of dismissal as to defendant Brown, and a verdict against the defendant railway company in the sum of fifteen thousand dollars, upon which judgment was entered in the following language: "It is further ordered and adjudged by the court that the plaintiff, T. R. Johnson, do have and recover of and from the defendant, the Texas and Pacific Railway Company, the sum of fifteen thousand ($15,000) dollars, with .8 per cent interest thereon from date, together with all costs in this behalf expended as between plaintiff and said defendant, for which let execution issue."

A motion by the railway company for a new trial was made and denied, and it moved to reform the judgment so that it should be entered up as against the company to "be paid in due course of the administration of the property of the Texas and Pacific Railway Company in the United States Circuit Court for the Eastern District of Louisiana, at New Orleans, and that no execution issue from this court to collect said judgment." This motion was overruled, and the company excepted, and thereupon appealed to the Supreme Court of Texas, by which the judgment was affirmed. The opinion of that court will be found reported in 76 Texas, 421. The company applied for a writ of error, which was allowed, and the case duly docketed in this court.

Upon the trial of the cause there was read in evidence on behalf of the plaintiff the petition of Brown, receiver, filed May 31, 1888, in the receivership case, for discharge as receiver and the order of the court made on said petition, and filed May 31, 1888. By this petition the receiver represented that the objects contemplated by the different bills filed in the causes named in the title had been accomplished, and all parties had agreed that "after the settlement with the receiver and the payment of costs and other liabilities, or provision for such payment fully made," the receiver should be discharged

.and the causes dismissed; and that his accounts were in condition for final settlement up to the first of May. Petitioner asked the court to have an accounting with him as receiver, and, when final settlement was made and petitioner fully indemnified against matters unsettled growing out of the receivership, that the property now in his hands "be turned over to the proper officer of the Texas and Pacific Railway Company." He further represented "that a large number of suits are pending in the courts of Texas and Louisiana against him as receiver for alleged torts connected with the conduct of the railway in its operation, and there are also judgments for small amounts before justices of the peace, aggregating about $12,000, for damages to stock and for property burned. by sparks from engines. There are also a considerable number of claims pending in this court by proceedings in intervention which have not been finally settled. A statement of these claims will be filed. Petitioner prays that he be fully protected against these claims, and for such other and proper relief as may seem necessary and proper."

The order thereon directed that an accounting be made by the receiver to the first day of June, "and at the coming in of which report, and it being found satisfactory and accepted, the remaining prayers of the petition will be granted by the court. In the meantime the receiver will continue to hold the property under the orders of the court until the first of June, 1888, at which time, if this order is not vacated, the railway and its property may be operated by the corporation under such orders as may be made by the court from time to time and under the supervision and control of the receiver, to the end that the property shall not pass beyond the control of the orders of the court nor of the receiver until the accounting takes place with the receiver and until he is fully protected by the corporation for causes of action originating against him and against the property pending the receivership." Then follows a direction in relation to stating the account.

The plaintiff also read in evidence a petition of the receiver of October 26, 1888, and the order of the Circuit Court of the

United States for the Eastern District of Texas on that petition, bearing the same date.

The petition (omitting titles) and order were as follows:

" To the honorable the judges of the said Circuit Court:

" Your petitioner, John C. Brown, as receiver of the Texas and Pacific Railway and its property in the above entitled and numbered causes, represents that heretofore it has been made to appear to the court that the objects and purposes of all the bills in these causes have been accomplished by settlement and agreement of the parties, and evidence of that fact filed as part of the record; that on its being so made to appear the court ordered him to render his accounts as receiver up to the first of June, which has been done, and it has been examined and approved, and since that date petitioner has kept his account as with the company. By the same order he was directed to hold the property under the orders of the court until the first of June, 1888, at which time if said order was not vacated the railway company might operate the road under such orders as the court might make from time to time and under the supervision and control of the receiver. No formal delivery of the road and property in his hands has been made to said railway company, and petitioner now asks that he be allowed formally to deliver all property and funds in his hands as such receiver to said railway company, and that he be allowed to account to said company according to his account filed up to the first of June and for all receipts and expenditures by him received and made since the first of June. He has carried over on the present books of the company the cash balance and all other balances of property and assets as found in his hands by his report to the first of June aforesaid, and he is now the president of said railroad company, and after his discharge will be in possession of all of said company's road, property, and funds as such for the said company. Wherefore he asks that he be discharged from his said receivership, and that his bond as receiver be vacated and annulled on payment of all costs legally taxable, but he prays the court to make such order as will charge the property so turned over in

the hands of said railway company and its assigns with all liability for which he as receiver is or might be held personally liable. Your petitioner further says that the sum of his compensation as receiver has been agreed on by the parties in interest and is satisfactory to him and has been settled up to the 31st day of October, 1888, at which time he asks that his discharge take effect.

"(Signed)      Jno. C. Brown."

" The Missouri Pacific Railway Company ⎫
              *vs.*                     ⎬ No. 11,181.
The Texas and Pacific Railway Company. ⎭

" On consideration of the foregoing petition it is now ordered, adjudged, and decreed that the prayer of the same be granted, and accordingly that John C. Brown, receiver of the property of the Texas and Pacific Railway in the above-entitled causes, be, and he is hereby, directed to make delivery unto said Texas and Pacific Railway Company of all property, funds, and assets in his hands as such receiver, and that he be directed to account to said company according to his account filed and approved up to June 1st, 1888, and for all receipts and expenditures by him received and made since the said 1st June, 1888. Such delivery will be made as of October 31st, 1888. It is further ordered that said receiver be finally discharged on said 31st October, 1888, from his receivership on payment of all costs legally taxed, and that thereupon his bond be vacated and cancelled. It is further ordered that said property nevertheless shall be delivered to and received by said Texas and Pacific Railway Company, subject to and charged with all traffic liabilities due to connecting lines and all contracts for which said receiver is or might be held, made, or in any way liable, and subject also to any and all judgments which have heretofore been rendered in favor of intervenors in this case and which have not been paid, as well as to such judgments as may be hereafter rendered by the court in favor of intervenors, while it retains the cases for these determinations or interventions now pending and undetermined or which may be filed prior to February, 1889, together with

needful expenses of defending said claims, and upon the con-
dition that such liabilities and obligations of the receiver, when
so recognized and adjudged, may be enforced against said
property in the hands of said company or its assigns to the
same extent it could have been enforced if said property had
not been surrendered into the possession of said company and
was still in the hands of the court, and with the further con-
dition that the court may, if needful for the protection of the
receiver's obligations and liabilities so recognized by this court,
resume possession of said property. The bills in these causes
will be retained for the purpose of investigating such liabilities
and obligations and for such other purpose as may seem need-
ful. It is ordered that all claims against the receiver as such
up to said thirty-first October, 1888, be presented and prose-
cuted by intervention prior to February first, 1889, and, if not
so presented by that date, that the same be barred and shall
not be a charge on the property of said company. It is
further ordered that the said receiver advertise in a daily
newspaper in New Orleans and in Dallas the fact of his said
discharge, and a notice to said claimants to make claim within
the time aforesaid, to wit, the first of February, 1889, and
that he post a notice of similar purport in the station-houses
of said railway.

"New Orleans, October 26th, 1888."

The deposition of John C. Brown was also read in evidence,
in which he testified: That he was receiver from December
16, 1885, to and including October 31, 1888; that "all of the
earnings and income of the road, after paying operating
expenses, in addition to over two millions of dollars volun-
tarily contributed by the stockholders, were appropriated to
the improvement of the road in my hands as receiver;" that
the expenditure of the money above alluded to was made
under orders of the United States Circuit Court for the Eastern
District of Louisiana, at New Orleans; that the improvements
and betterments were highly necessary to carry on the busi-
ness of the road and to operate it as a common carrier; that
"debts were created to raise money to make said improve-

ments to the amount of nearly two million five hundred thousand dollars, the larger portion of which has been paid, and some of which is in litigation;" that the circumstances under which the improvements were made were, briefly, as follows: " In the summer or early autumn of 1885 the owners of the property became satisfied that the company could not longer continue paying interest upon the bonded debt without first expending a large amount of money in the renewal of tracks, raising of roadway, widening cuts and embankments, putting in a large amount of new cross-ties, purchasing a large amount of rolling stock and motive power, and the renewal of bridges, etc. A committee was raised by the board of directors to give a personal inspection of the line with the aid of experts and report to the board the condition of the property and the amount necessary to place the property in a fair condition. The ultimate result of the report of that committee was to place the road in the hands of a receiver and suspend the payment of interest, it being then believed that it would be necessary to sell the road finally under foreclosure of mortgage. The committee of reorganization afterwards devised the plan which was approved by the parties in interest, which avoided final foreclosure. In the meantime the improvements aforesaid were made."

Plaintiff further offered to prove the money value of the improvements and betterments put upon the road during the receivership, whereupon it was admitted that " such betterments placed on said railroad out of the earnings of the road in excess of the operating expenses while in the hands of the receiver were of value sufficient to more than cover the amount claimed by plaintiff in this suit."

The record also contains the evidence as to the circumstances surrounding the accident and the nature of the injuries inflicted.

The Supreme Court of Texas held that a railway company, in the absence of some statute so providing, will not be liable for the acts of its receiver by reason alone of his relation to it; but that if such company and its creditors should by collusion procure a receivership, or if the receiver in fact operated the road under orders of a court without jurisdiction, it would

seem that the railway company would be bound by all acts of such receiver: That a claim for damages caused by injuries inflicted through the negligence of the receiver while he was operating the railway is entitled to payment out of current receipts, and if the current earnings be invested by the receiver in betterments on the road, which, without sale, is returned to the company at the close of the receivership, then the company must be held to have received the property, charged with any claim which the receiver ought to have paid out of the earnings: That when a receiver has been discharged and the property all returned to the company under order of the court in which the proceedings were had, the control of the court over the property is ended, and the property, when released from the custody of the court, stands subject to any claim that may rest against it: That the order of the United States Circuit Court for the Eastern District of Louisiana, in the receivership proceedings affecting the Texas and Pacific Railway, to which the plaintiff was not a party, prescribing that all persons who had claims, with which the property might be charged, should present them by intervention to that court, was without authority of law and not binding upon the plaintiff as affecting his right to enforce his claim by suit; and that the time within which a claim for damages might be prosecuted against a railway company was fixed by law and could not be altered by order of court: That under the act of Congress of March 3, 1887, persons having claims against receivers might sue upon and establish them in any court having jurisdiction, and this right could not be nullified by order of court; and that after discharging the receiver and restoring the property to its owners, the United States court could not maintain such jurisdiction over the matter as to prevent the prosecution of such claim to judgment and execution: That a suit in a state court for damages for personal injuries caused by the negligent operation of the Texas and Pacific Railway while in the hands of a receiver could be maintained against the railway company after its property was restored to it, the current earnings of the road having been used by the receiver in improving it.

Other rulings were made in reference to the merits upon which the recovery rested.

*Mr. John F. Dillon,* (with whom was *Mr. Winslow S. Pierce* on the brief,) for plaintiff in error.

I. All the questions in this case are open for review by this court. The charter of the Texas and Pacific Railway is a public act of Congress. The company having been created to subserve public purposes, and its creation having been provided for by public law, the nature and sovereignty of its organization are judicially recognized. *Pacific Railroad Removal Cases,* 115 U. S. 1; *Osborn* v. *Bank of the United States,* 9 Wheat. 738.

This case comes here under the provisions of Rev. Stat. § 709. The language of the court in *McNulta* v. *Lochridge,* 141 U. S. 327, 329, is applicable here: "But, while we think that plaintiff in error is not entitled to immunity by virtue' of the statute of 1887, we are authorized by Revised Statutes, sec. 709, to review the final judgment or decree of a state court where 'any title, right, privilege, or immunity is claimed under . . . any . . . *authority* exercised under the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed by either party under such . . . authority,' . . . etc. Now, as McNulta was exercising an authority as receiver under an order of the Federal court, and claimed immunity as such receiver from suit without the previous leave of such court, and the decision was adverse to such claim, he is entitled to a review of such ruling whether his claim be founded upon the statute or upon principles of general jurisprudence. We regard this as a legitimate deduction from the opinions of this court in *Buck* v. *Colbath,* 3 Wall. 334; *Feibelman* v. *Packard,* 109 U. S. 421; *Pacific Railroad Removal Cases,* 115 U. S. 1; *Etheridge* v. *Sperry,* 139 U. S. 266, and *Bock* v. *Perkins,* 139 U. S. 628."

II. The state court had no power to render a personal judg-

ment against the Texas and Pacific Railway Company upon a cause of action arising out of the negligence of John C. Brown, receiver, nor had it power or jurisdiction to award execution against the railway company upon such judgment.

The court below seems to have recognized the difficulty — manifest enough — in the affirmance of a *personal* judgment founded exclusively on the theory of an equitable charge upon specific property in the hands of an owner who has taken it *cum onere.* Appreciating the necessity of a personal liability as the foundation of a personal judgment, it seems to have indulged its own suggestion that the receiver was, in some qualified sense sufficient for its purposes, the agent of the railway company. In cases involving hardship it has been more than once argued that liability on the part of a corporation, in such cases as the present, might be deduced through the application of the rules of agency, but the inapplicability of these rules has been easily demonstrated. It was with such a suggestion that the court dealt in the case of *Farmers' Loan and Trust Co.* v. *Central Railroad of Iowa,* 7 Fed. Rep. 537. See also *Hicks* v. *I. & G. N. Railway,* 62 Texas, 40; *Godfrey* v. *Ohio & Miss. Railway,* 116 Indiana, 30; *Bell* v. *Indianapolis, Cincinnati &c. Railroad,* 53 Indiana, 57.

In the case of *Davis* v. *Duncan,* 19 Fed. Rep. 477, a receiver had surrendered a railroad property to a company — the same company from which he received it — under an order which omitted provision for claims against the receiver which had not been put in suit. The receiver was subsequently sued on a claim of this description. Hill, J., said: "The railroad company is not liable for the injuries complained of in the bill for the reason that they were committed while it was out of possession of the property and had no control over it. This conclusion is sustained by principle and authority" (citing cases).

The equitable doctrine for the existence of which the court below contended, *i.e.* the doctrine that a railway company to which its property is surrendered by a receiver who has applied current receipts to its improvement and betterment,

leaving operating expenses unpaid, takes the property *cum onere* to the extent of such betterments and improvements, is a doctrine of comparatively recent announcement. It had its source and origin in the hardship of particular cases. Until the decision by the court below of the present case it was never decided, nor even contended, that the mere existence of such a situation could result in a personal liability of the company to the extent of the amount by which the property received by it was thus burdened. It has been well understood that the receiver of a railroad property represents the court in its administration, and is the agent of no person or corporation; and it has been equally well understood that it is the function of the court to provide for the expense of operation and for the liabilities of its receivership.

III. The equity upon which the trial court and the Supreme Court of Texas relied in the rendition and affirmance of the judgment below did not arise in this cause.

The equity upon which the plaintiff insists and which was recognized by the court below, has its foundation in a lack of opportunity to a claimant to prove his claim in the court in which the receivership cause is, or was, pending. This equity, in its broadest assertion, is recognized only to the extent of giving to a claimant an opportunity which has been denied by the discharge of property from the custody of the receivership without provision for his claim, and without reservation of power to resume possession for the purpose of meeting the liability involved in his claim.

No such equity exists, or will be recognized where there has been opportunity afforded to present claims in the court of administration, and seasonable notice or knowledge of such opportunity.

After full administration by a court of competent jurisdiction, and actual notice and opportunity to parties interested to present their claims, the purchaser or party taking from the court holds the property free from the claims of all such claimants with notice and opportunity. The practice in such cases, and the conclusiveness of such administration, are fully presented in the cases, in this court, of *Williams* v. *Gibbes*, 17

How. 239; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Wiswall* v. *Sampson*, 14 How. 52.

IV. The order of the Federal courts retaining the bills, affording opportunity for intervention, and limiting the time within which intervention could be made so as to establish intervening claims as charges upon the property surrendered, was a legitimate, proper, and salutary exercise of jurisdiction.

It may be frankly conceded that the original petition of the plaintiff seeking a personal judgment against the receiver in his capacity as receiver, was properly brought without leave of court, and it may be even conceded for the purposes of argument that such suit was properly brought in the state court of Texas, and could have been there carried to recovery. But it is entirely clear that such a recovery would be effective only as a judicial ascertainment of the plaintiff's claim and that the judgment itself could only have been realized out of the property in the hands of the receiver, after it had been presented to the court in which the receivership cause was pending, subjected to the equitable scrutiny of that court, and allowed for payment in the course of its administration. *McNulta* v. *Lochridge, ubi supra; Dillingham* v. *Russell*, 73 Texas, 47; *Harding* v. *Nettleton*, 86 Missouri, 658; *Jessup* v. *Wabash & St. Louis Railway*, 44 Fed. Rep. 663.

In this case the defendant company has no relation to or concern with the claim of the plaintiffs except as the same might be adjudged to be a charge upon property of which it is the owner. The personal claim was against the receiver, and, before property surrendered by him could be reached with an equitable charge for his liabilities, the claim must have been ascertained and reduced to judgment. This is merely the familiar rule affecting creditors' bills, and clearly applicable to a case of this character. *Brown* v. *Long*, 1 Iredell Eq. 190; *Massey* v. *Gorton*, 12 Minnesota, 145; *S. C.* 90 Am. Dec. 287; *Van Weel* v. *Winston*, 115 U. S. 228; *Brown* v. *Wabash Railway Co.*, 96 Illinois, 297; *Jessup* v. *Wabash &c. Railway, ubi supra; Davis* v. *Duncan*, 19 Fed. Rep. 477.

It will be observed that the order of the Federal court charging the property with receivership liabilities, and limit-

ing the time within which interventions must be filed in order to reach the property, was in no sense an order analogous to a statute of limitation. It would have been competent for the court to have omitted these provisions from its order, and to have discharged the property absolutely from the custody of the court and its receiver. In such event, the property would not have been subject to any liens, or charges for receivership liabilities, except through the possible operation of the doctrine of equity in respect to betterments and improvements which we have heretofore discussed, and which has no bearing upon this branch of the argument. In discharging the property from the custody of the receivership, the court of its own motion exacted from the defendant company the condition that the property in its hands should remain subject to and charged with such receivership liabilities as the court had, or might, within a specified time and in a specified manner, adjudge against it. This was a voluntary provision of the court; and, no matter how usual or prudent it may have been, and no matter how careless or unjustifiable, from a standpoint of fairness, its omission would have been, it was still a voluntary precaution, and the right reserved was not one which would have existed independently of the reservation. It was not, therefore, an order made in limitation of any rights of the plaintiff.

The power in such cases to make orders limiting the time for presentation of claims in order that they shall be chargeable upon the surrendered property has been clearly recognized by this court. *Olcott* v. *Headrick,* 141 U. S. 543, and cases cited; *Union Trust Co.* v. *Morrison,* 125 U. S. 591. See also *Pine Lake Iron Co.* v. *Lafayette Car Works,* 53 Fed. Rep. 853.

*Mr. H. J. May,* (with whom were *Mr. C. A. Culberson* and *Mr. A. H. Garland* on the brief,) for defendants in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

This is a writ of error to review the judgment of the highest court of a State in which a decision in the suit could be

had, under section 709 of the Revised Statutes, providing for such review where the validity of an authority exercised under the United States is drawn in question and the decision is against its validity, or "where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty, or statute of, or commission held or authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity specially set up and claimed, by either party, under such Constitution, treaty, statute, commission, or authority."

Because the suit might have been brought in the Circuit Court of the United States, or removed thereto from the state court on the ground that it was one arising under the laws of the United States, in that the Texas and Pacific Railway Company was a corporation organized under and by virtue of acts of Congress, it does not follow that the state court decided against any title, right, privilege, or immunity in exercising its jurisdiction. The railway company was not exempted from suit in the state courts by the law of its creation or any other act of Congress; and we perceive no title, right, privilege, or immunity secured by that law, which was denied by the judgment under consideration.

Nor can jurisdiction be maintained on the ground that a right or immunity was claimed under the authority exercised by the receiver in virtue of the order of the Circuit Court of the United States, which right or immunity was denied, as in *McNulta* v. *Lochridge*, 141 U. S. 327. The judgment was in favor of the receiver and the writ of error is brought by the company, and it is well settled that the right or immunity must be one of the plaintiff in error and not of a third person only. *Ludeling* v. *Chaffe*, 143 U. S. 301; *Giles* v. *Little*, 134 U. S. 645.

The validity of no treaty or statute of the United States was drawn in question, nor was any claim of right or immunity set up under the Constitution or any treaty or statute of, or commission under, the United States, so that we are confined to the inquiry whether the validity of an authority exercised under the United States in any other regard than above

indicated, or any claim under such authority, was denied. And as the defence was directly made that the plaintiff below was subject to the order of October 26, and must, therefore, resort to the court which entered it for the collection of his claim, and could not recover a judgment *in personam* collectible by the ordinary process ; and, moreover, that his claim was thereby barred; the overruling of that defence may properly be held to have amounted to a decision against the validity of the order, or against a claim of right or immunity thereunder.

As respects the contention for the railway company that a personal judgment could not be rendered against it because it was not liable for acts of negligence committed by the receiver, that was a question of general law and for the state court to pass upon. In the view of that court, a railway company might be held directly liable when a receiver is appointed in an amicable suit at the instigation of the company and for the company's own purposes, and, these purposes being accomplished, the property is returned to its owner, the rights of no third persons as purchasers intervening, upon the ground that the acts of the receiver might well be regarded as the acts of its own servant, rather than those of an officer of the court, which under such circumstances he would only be *sub modo*. But as the court did not feel authorized to entertain a conclusion which might carry the implication that this receivership would have been created or continued, although its object had only been to place the property temporarily beyond the reach of creditors until it could be augmented in value by improvements made from earnings under the protection of the court, that rule was not applied in this case. The company was held liable upon the distinct ground that the earnings of the road were subject to the payment of claims for damages, and that as, in this instance, such earnings to an extent far greater than sufficient to pay the plaintiff had been diverted into betterments, of which the company had the benefit, it must respond directly for the claim. This was so by reason of the statute, (Laws Tex. 1887, 120, c. 131, § 6,) and, irrespective of statute, on equitable principles applicable under the facts.

The railway company contends that its liability turned upon the fact that it took possession upon condition that its property should be charged with the receivership liabilities, and that it is immaterial whether the property was so charged by the order of the Circuit Court of the United States or by operation of general doctrines of equity, because, in either aspect, it was the property alone that was charged : if by the order of the court, it could only be with such liabilities as had been or should be adjudged by that court ; if, upon equitable principles, then it could only be to the extent of the amount diverted to betterments, and defendant in error should have been confined to a lien on specific improvements, measured by the proportion which the aggregate of like claims would bear to the amount diverted ; but the state court decided otherwise, holding, in view of the facts disclosed, that the burden assumed by the company was that of a direct liability, and that judgment against it could be rendered in the usual form and collected in the ordinary way.

These conclusions did not rest upon the order of October 26 as affirmatively imposing a specific liability upon the company, and the only question for us to determine is, whether in ruling that that order did not preclude such a judgment as was rendered and did not operate to require the defendant in error to submit his judgment to the Circuit Court of the United States at New Orleans to obtain its collection in such manner and to such extent as that court might be advised, a claim of right or immunity under an authority exercised under the United States was erroneously decided against.

The position of plaintiff in error seems to be that the order constituted matter in bar of a recovery against the railway company on the merits, on the theory that the property passed to the company upon certain conditions as to outstanding claims, irrespective of the fact that those conditions were intended to secure payment in that court and not to defeat it, and that the company only resumed its own, augmented in value by the use of earnings which should have been applied to the extinguishment of such claims ; or that the judgment should have been originally rendered, or been reformed, so as

to provide for payment in due course of administration in the Circuit Court, and not otherwise.

By section three of the act of March 3, 1887, 24 Stat. 552, c. 373, as corrected by the act of August 13, 1888, 25 Stat. 433, c. 866, every receiver, appointed by a court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with the property, without the previous leave of the court by which such receiver was appointed. Necessarily, such suit may be brought in any court of competent jurisdiction and proceed to judgment accordingly. This suit was so brought; the railway company, on being made a party, answered in bar, and judgment followed.

Nevertheless it is insisted that this recovery was effective only as a judicial ascertainment of the amount, and that the judgment itself could only be realized out of the property of the company, after it had been presented to the court of the receivership cause and been allowed for payment, subject to the contingency that that court might hold that it was exhibited too late.

This result is declared to arise out of the necessities of the case and to be recognized in the last clause of the third section of the act of Congress of March 3, 1887, which adds to the provision that suit may be brought against a receiver without leave of the appointing court, the words, "but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed so far as the same shall be necessary to the ends of justice." And it is also urged, in repetition of the argument that judgment *in personam* could not be recovered, that this suit as against the railway company was necessarily a proceeding *in rem*, and could only be instituted and the property charged in the court having jurisdiction of the *res*. In other words, the contention assumes that all the property of the company after the discharge of the receiver was still under the protection of the Circuit Court of the United States for the Eastern District of Louisiana in respect of subjection to this and like claims.

We are of opinion that these views are inapplicable to the

case. This action was in itself in no sense a proceeding *in rem*, and the state court .has held on other than Federal grounds . that the company was directly liable. The property was no longer in the custody of the Circuit Court, and it had no possession that would be interfered with by the levy of an execution, so that defendant in error was not obliged to resort to an intervention in that court before he could collect, unless he was personally bound to do so by force of an adjudication to that effect operating upon him. In this connection it should be observed that the property was not sold but merely redelivered to the company. No judgment *in rem* was entered; no fund existed through a sale in foreclosure; the earnings far exceeded the debts during the temporary management; and it did not appear that either in reference to expenses incurred in the administration or in the matter of claims resting on controverted priorities, or otherwise, there were any equities to be adjusted which required the further exercise of jurisdiction. ,

The order of October 26 was entered by the Circuit Court for the Eastern District of Louisiana, but the record does not disclose that similar action was taken in Texas, although the titles of the petitions and orders of May 31 and October 26 include the names of two cases as pending in the Northern District of the latter State, and reference is made to them; but in any view, the Circuit Court for the Eastern District of Louisiana was deemed the court of primary administration.

The order provided that the property should be delivered to the railroad company subject to "such judgments as may be hereafter rendered by the court in favor of intervenors, while it retains the cases for these determinations or interventions now pending and undetermined, or which may be filed prior to February 1, 1889," and that such as were not so presented and prosecuted by intervention by that date should be barred, and should not "be a charge on the property of said company;" and further, that "the court may, if needful for the protection of the receiver's obligations and liabilities so recognized by this court, resume possession of said property."

The general equity jurisdiction of the Circuit Court no doubt embraced the authority to hold possession of the property and to determine the rights of all persons who were parties, or who made themselves parties to the proceedings before it; and if the property sequestrated had gone to sale and a fund been realized for distribution, then, upon notice appropriate to proceedings *in rem*, the defendant in error might have been bound by the disposition thereupon made; yet, not only was there no proof that the notice required by the order was ever given, or any other notice, but the receiver was discharged, his bond cancelled, and the property surrendered, without sale or transfer, so that it is in effect sought to have defendant in error held personally bound by an order to which he was not a party, entered by a court into which he was not brought in any manner.   It is impossible to concede that he was in contempt in the recovery of his judgment or would be in enforcing it against the company's property; but that is the necessary result of the position taken by counsel.

Certainly the preservation of general equity jurisdiction over suits instituted against receivers without leave does not, in promotion of the ends of justice, make it competent for the appointing court to determine the rights of persons who are not before it or subject to its jurisdiction; and the right to sue without resorting to the appointing court, which involves the right to obtain judgment, cannot be assumed to have been rendered practically valueless by this further provision in the same section of the statute which granted it.

The order was not a decree *in rem* condemning the particular thing seized, but an order providing for the resumption of possession thereafter, if found necessary, to the end that such a decree might then be granted; and we are aware of no principle which would justify us in holding that a court, under the circumstances which existed here, could part with its jurisdiction over property by the complete surrender thereof to its owner, and at the same time constructively retain jurisdiction over such property so as in that respect to bind those who would otherwise be unaffected by its orders.

The case was not one of a fund in court, and the authorities upon the question of limitation of time for the presentation of claims to share in the distribution of such a fund are not in point. It was not a case of purchase in which compliance with stipulated conditions forms part of the consideration, and the extent of the burdens assumed is defined. It did not present the question of the power of the court in the instance of a sale to deliver the property free from any liabilities whatever incurred in administration. And we do not think the Circuit Court attempted to accomplish the result contended for, or that its order is open to the interpretation put upon it by counsel for the company.

The receiver was about to be discharged and the property redelivered to the company. On the one hand, the receiver was entitled to protection from liability, and on the other, just claims were entitled to be paid. The Circuit Court sought to secure both objects by the terms of the order and the conditions annexed to the acceptance of possession, but did not regard itself as constrained to indefinitely prolong the pendency of the equity proceedings for that purpose. It reserved those proceedings, therefore, for the disposition of pending interventions and such as might be filed within a time fixed, at the expiration of which the court could not be called on to allow further claims and assert control over the property for their satisfaction. They would thereafter be barred from prosecution under those proceedings.

In this way the Circuit Court recognized and relieved itself from the obligation to see that no injustice resulted from the action it was taking, which action operated to withdraw from claimants against the receiver the security of his bond and possibly of the property. But after February 1, 1889, those who had not intervened would cease to be entitled to resort to the Circuit Court in the equity suits, and would be remitted to such other remedies as might be within their reach. If the recovery of defendant in error and the collection of his judgment had been dependent upon the order or upon any action of the Circuit Court in his favor in the original suits, a different question would have been presented, but as the matter

stands we perceive no. aspect in which that order can be treated as operating in limitation of the rights of defendant in error except in the particular of resort to the Circuit Court as above indicated.

From these considerations we conclude that there was no error in the result arrived at by the Supreme Court of Texas in the disposition of Federal questions, and its judgment is accordingly                                                     *Affirmed.*