CASE 62—ACTION FOR NEGLIGENCE CAUSING DEATH—
JANUARY 28.

## Louisville Southern Railway Co.'s Receivers, Etc. v. Tucker's Administrator, Etc.

APPEAL FROM ANDERSON CIRCUIT COURT.

1. REMOVAL OF CAUSES—DIVERSE CITIZENSHIP.—An action for two thousand dollars having been properly brought in the State court an application for removal into the federal court on account of diverse citizenship is properly denied.

Lou. Sou. Ry. Co.'s Receivers, &c., v. Tucker's Admr., &c.

2. SAME—FEDERAL QUESTION.—Under the act of Congress of March 3, 1887, as amended by the act of August 13, 1888, an action against a receiver appointed by the federal court may be brought, without consent of the appointing court, in any court having jurisdiction, and such action is not removable on the ground that it involves a federal question.

3. CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.—Whether the plaintiff's decedent was guilty of contributory negligence was a question of fact and it was properly submitted to the jury.

4. JOINT JUDGMENTS IN TORT, SEVERABLE.—It was error to render judgment jointly against a railway company and the receivers operating same for negligent operation of road, but such a judgment is severable and may be affirmed as to the receivers and reversed as to the railway company.

HUMPHREY & DAVIE AND C. A. HARDIN FOR THE APPELLANTS. (BRIEF WITHDRAWN).

BELL & BELL AND W. G. WELCH, FOR THE APPELLEE.

1. The State court was right in declining to surrender jurisdiction to the federal court.

2. Although the judgment is joint, it may be reversed as to one of the defendants, the Louisville Southern Railway Company, and affirmed as to the receivers. Civil Code, sec. 763; Black on Judgments, secs. 160 and 207; same, sec. 211; Pfaffinger v. Gilman, 28 S. W. R., 1089.

3. Defendant's motion for a peremptory instruction was properly denied.

4. There was no error in giving or refusing instructions. L. & N. R. R. Co. v. McCoy, 81 Ky., 413; Ky. Cent. R. R. Co. v. Gastineau, 83 Ky., 128; L. C. & L. R. R. Co. v. Case's Admr., 9 Bush, 736; L. & N. R. R. Co. v. Berry's Admr., 96 Ky., 610; Martin, Admr., v. L. & N. R. R. Co., 95 Ky., 615-616.

THOMAS C. BELL, ON THE SAME SIDE.

1. The judgment, though joint, was severable. Texas Pac. Ry. Co., v. Johnson, 76 Tex., 421; 151 U. S. Rep., 81 (Lawyers' Edition); Civil Code, sec. 93, sub-sec. 2.

2. The appointment by the federal court of the receivers did not draw to that court jurisdiction of actions against the receivers. The two cases relied on by counsel for the appellants (Carpenter v. N. P. Ry Co., 75 Fed. Rep., 850 and White v. Ewing,

159 U. S., 36) are not conclusive of this case. The first case cited is analogous but is clearly wrong; the second cited (White v. Ewing) was upon several claims, each for less than two thousand dollars.

See further, Central Trust Co. of N. Y., v. The E. T. V. & G. R. R. Co., 59 Fed. Rep., 523; McNulta v. Lockridge, 141 U. S., 327; Texas Pacific Ry. Co. v. Johnson, 151 U. S., 81.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The personal representative of W. T. Tucker brings this action to recover the sum of $2,000 for the loss of the life of his intestate, alleging that the defendant, the Louisville Southern Railway Company, is a Kentucky corporation, and as such constructed and operated a line of railroad in this State; that in July, 1893, the railroad was put into the hands of the defendants, Spencer and Fink, as receivers, by order of the United States Circuit Court for Kentucky in the action of the Central Trust Company of New York against the Louisville Southern Railway Company, and that they were, by their employes and agents, operating and carrying on the business of the railroad on the 30th day of August, 1894, and thereafter; that on that day his intestate was killed by the negligence and carelessness of defendant's employes in charge of their train, and in a higher grade of service than decedent, he being at the time subject to and obeying their orders.

At the appearance term of the court, appellants Spencer and Fink filed a petition seeking to remove the cause from the State Court to the circuit court of the United States. This petition recites that at the time of the accident they were acting as receivers of the Louisville Southern Railway under an appointment made by the United States Circuit Court in the case above mentioned, and has possession of and were operating the road; that the Louisville Southern Railway Company was not lia-

Lou. Sou. Ry. Co.'s Receivers, &c., v. Tucker's Admr., &c.

ble or responsible for the injuries complained of; that, at
the time of the institution of this suit and the making of
the motion, they were citizens and residents of the State of
New York, whilst plaintiff was a citizen and resident
of the State of Kentucky; that the suit was one which
arose out of the conduct of the petitioners under their ap-
pointment as receivers, and was ancillary to the main
action of the Central Trust Company of New York against
the Louisville Southern Railway Company, which was
pending in the United States Circuit Court for the district
of Kentucky.   They offered bond with security for their
entering into the circuit court of the United States on the
first day of its next session, and for costs that might be
awarded by the circuit court of the United States if that
court should hold that the case was wrongfully and im-
properly removed thereto, and prayed the State court to
accept the bond and proceed no further in the cause.   The
State court refused to surrender jurisdiction, and this
refusal of the State court is the first ground relied on for
reversal.

The defendants thereupon filed answer denying li-
ability for the injury complained of, and pleading avoid-
ance thereof, because of contributory negligence on the
part of decedent.   The case, being tried out, resulted in a
verdict and judgment in favor of appellee for $2,000; and
to reverse that judgment this appeal is prosecuted.

Plaintiff's intestate was a young man, 21 years old, un-
married, in good health, earning $50 per month as brake-
man.   He was killed on August 30, 1894, at Waddy station,
being at that time brakeman on a construction train which
was working southwardly from Louisville.   The engine
attached to this train was placed, with its front end north,
about the middle of the train, and there being

some eleven or twelve cars on the end towards Louisville, and eight or nine cars on the other end. There was a side track at Waddy, and the conductor in charge of the train wished to take out of the train an empty box car, which was next to the engine, towards Louisville, and place it on this siding. To do this, he cut off all the cars north of the engine, except the box car, which he intended to put on the side track; and the engine then pushed the cars on the opposite end of the train beyond the switch, and detached them, leaving them standing on the main track. The engine then pushed the empty box car north of the switch, the engine being between the car and the switch. In order to save time, the conductor and engineer determined to place the car on the siding by what is known as a "running switch," which is made by having some one stand with his hand on the switch stand as the engine approaches the switch; the engine being uncoupled from the car just before reaching the switch, the engine being allowed to run onto the main track, and the switch being thrown immediately after the engine passes it, thus forcing the car onto the switch by the momentum acquired before it is uncoupled from the engine. In order to uncouple the engine at the proper time, deceased was compelled to take his place on the pilot of the engine. At the first attempt the car failed to run into the switch, for lack of momentum, and another attempt was determined on by the conductor and the engineer. When the engine moved down the track in order to get sufficient momentum to make the second trial, deceased continued to occupy his position on the pilot. As the engine and car approached the cars which had been left standing on the main track north of the switch, the engineer attempted to reverse his engine, but could not get the lever to go over.

He then tried to stop by means of the air brake, but "the air wouldn't work good;" and as a consequence the empty car collided with the cars behind it with such violence as to drive the empty car back upon the engine, breaking the pilot bar and killing plaintiff's intestate.

The first question is, should the case have been removed on the petition of appellants, the amount involved being only $2,000? And it must be determined by the provisions of the United States Statutes upon the subject of removal of action.

The act of Congress of August 13, 1888 (Ky. Stat., p. 39), provides "that the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law and in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, . . . in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid."

The right to remove to a federal court from a State court is found in section 2 of that act, which reads as follows: "That any suit of a civil nature, at common law or in equity, arising under the Constitution or laws of the United States, . . . of which the circuit courts of the United States are given original jurisdiction in the preceding section, which may be now pending, or which may hereafter be brought, in any State court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district." And the facts to be stated in the

[ 32 ]

petition for removal are found in section 3, by which it is provided "that if any action is commenced in a State court, and the matter in dispute exceeds the sum or value of $2,000.00, exclusive of interest and costs, the sum or value being made to appear, one or more of the plaintiffs or defendants, before the trial, may state to the court and make affidavit if the court require it, and be entitled to removal." We think these two sections, taken together, make it clear that no removal can be had, as a matter of right, from a State to a federal court, unless the sum exceeds, exclusive of interest and costs, the sum of $2,000.

But it is contended for appellants that the right of removal exists in this case because this suit is one which arises out of their conduct as receivers, and is ancillary to the action in which they were appointed, and which was pending in the circuit court of the United States at the time of the institution of this action, and can not be maintained without the previous leave of the court appointing them.

There can be no question that the contention of appellants on this point is the general doctrine, and has frequently received the approval of this court. See 2 Story, Eq. Jur. (2d Ed.), 883, and Hazelrigg v. Bronaugh, 78 Ky., 62. But this rule has been changed by section 3 of the Act of Congress of August 13, 1888, which provides "that every receiver or manager of any property appointed by any court of the United States may be sued in respect to any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

This question has been passed on by the Supreme Court of the United States in McNulta v. Lockridge, 141 U. S., 327, [12 Sup. Ct., 11], and The Tex. Pac. Railway Co. v. Johnson, 151 U. S., 81, [14 Sup. Ct., 250], the court holding in the latter case that: "By section 3 of the act of March 3, 1887, as corrected by the act of August 13, 1888, every receiver appointed by a court of the United States may be sued, in respect to any transaction of his in carrying on the business connected with the property, without the previous leave of the court by which such receiver was appointed. Necessarily, such suit may be brought in any competent jurisdiction, and proceed to judgment accordingly. This suit was so brought."

The question was discussed in the case of Central Trust Co. of New York, v. East Tennessee, V. & G. Ry. Co., 59 Fed. Rep., 523, the court holding that: "The permission given by the third section of the judiciary act of 1887-1888, to sue receivers of federal courts, for acts or transgressions of theirs in carrying on the business connected with the property, without leave of the appointing court, is not restricted to the courts having jurisdiction of the receiver and the property, or to the federal courts generally, but extends to any court of competent jurisdiction; and the appointing court has no power to enjoin the bringing of such suits in any other than the federal courts."

It seems to us that these decisions are conclusive on this contention of appellants.

It is also insisted that there is no evidence of any negligence on the part of the railroad employes in the facts connected with the death of plaintiff's intestate, but that, on the contrary, he was guilty of gross contributory negligence, in assuming the position on the pilot when there was no occasion for him to be there, and that defendants were entitled to a peremptory instruction.

The proof is conclusive that intestate took his position on the pilot of the engine by the direction of the conductor and engineer, and that the duty which he was called upon to discharge at that time could not have been performed by him from any other place; and it seems to us that it was necessary for him to be there while the engine was going down the track to a position from which to get the proper speed for the intended movement, as the engine would be in motion both going and returning, and he would have had no opportunity of getting into his position after the engine and car had started back towards the switch.

The proof shows that both the conductor and engineer, who were employes superior in authority to decedent, knew that they were attempting a very dangerous feat— one expressly prohibited by the rules of the company— and that the accident resulted from the failure of the engineer to stop his engine before it struck the cars standing on the main track. Whether this failure was the result of negligence on the part of the engineer, or of some defect in the machinery controlling the engine, does not conclusively appear. But in either case decedent was not at fault.

It is also contended that the instruction upon the question of the measure of damages is erroneous and prejudicial to appellants.

Whilst it may be conceded that the instruction on this question is not aptly drawn, it does not appear to have been so misleading as to be prejudicial to appellant's rights. If plaintiff was entitled to recover at all, a judgment for $2,000 was certainly a very reasonable one.

Appellants contend that there should be a reversal as to

both defendants because of the judgment against the Louis-ville Southern Railway Company.

There can be no doubt that the judgment against that company was erroneous, as the receiver of a railroad is the representative of the court, and not of the company, and the company is not liable for his acts or those of his employes. This doctrine is fully sustained in High on Receivers, section 369, and by many adjudications both of the State and federal courts. But the contention that the judgment against the receivers must be reversed for this reason is untenable. There was no demurrer or motion to elect filed by appellants on this ground. The allegations of the petition show that no recovery could properly be had against the corporation, and the whole proceeding shows that it was not an action against the receivers, and not against the company; and it does not follow that the judgment is void against the real party defendant.

Section 373 of the Civil Code provides that, "though several defendants are summoned, judgment may be ren-dered against any of them if the plaintiff would have been entitled to judgment against them in an action against them alone."

Undoubtedly the common law, in actions brought on a joint contract, is that judgment must be rendered against all or none. See Joyes v. Hamilton, 10 Bush, 544. But a different rule prevails in actions for tort or wrongful act. See Shelton v. Harlow, 15 B. Mon., 547; Buckles v. Lambert, 4 Metc. (Ky.), 330; and Loving v. Com. for use, &c., 20 Ky. Law Rep., 229 (Ky.) [45 S. W., 773]. In such actions, where several persons are sued jointly, a joint verdict may be rendered, and new trial granted as to some of them, and the full amount of the judgment left stand-

ing against one, the liability of such defendants being both joint and several.

For the reasons indicated, the judgment against the railroad corporation is reversed, and the judgment against the receivers, Spener and Fink, is affirmed.