GUARANTY TRUST CO. OF NEW YORK v. CHICAGO UNION TRACTION CO. et al.

In re WAGNER.

(Circuit Court, N. D. Illinois, E. D. January 18, 1910.)

No. 26,727.

STREET RAILROADS (§ 58*)—RECEIVERS—SALE—CLAIMS.

　　Claimant brought suit in a state court against the receivers of a street railroad company, resulting in a judgment in her favor. When that judgment was entered the road had been sold under a decree requiring security for all receivers' liabilities arising out of the operation of the road which might not be met out of the funds remaining in the receivers' hands after the execution of the decree of sale, and referring the ascertainment of all such liabilities to a master in chancery, and fixing the time for hearing of such claims. Held, that the foreclosure proceeding in which the receivers were appointed was a proceeding in rem, and that claimant could not participate in such security fund, except on the terms specified for intervention; and hence the judgment was not conclusive of the receivers' liability

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the hearing of the claim before the master, but evidence was admissible to show that the accident was not due to the receivers' negligence, but occurred on the road operated by another corporation, and that the negligence was that of employés of that corporation.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

In Equity. Suit by the Guaranty Trust Company of New York against the Chicago Union Traction Company and others. In the matter of the claim of Emilie Wagner. On report of master disallowing the claim. Confirmed.

Charles L. Mahony, for receiver of Chicago Union Traction Co. and others.

Adolph S. Froelich, for claimant.

GROSSCUP, Circuit Judge. The claim is for personal injuries occurring in 1903. Upon the testimony submitted to the Master on this claim, it was found that at the time of the accident the Receivers were not operating the road, nor was the employee, through whose negligence the accident happened, the employee of the Receivers; on the contrary, the road upon which the accident happened was the Chicago Consolidated Traction Company's road, and the employee, through whose negligence it happened, was the employee of that road. Upon this proof, the claim was dismissed by the Master.

The claimant, however, relies upon the facts following: A suit on this claim was brought in one of the State Courts, within two years of the accident, by the claimant against the Receivers of the Chicago Union Traction Company, who were operating the Chicago Union Traction Company at the period that the accident occurred on the Consolidated Company's road, which suit resulted in a judgment of Six Hundred Dollars in favor of the claimant. In this suit in the State Court, the Receivers of the Chicago Union Traction Company first pleaded the general issue and subsequently sought to put in a special plea, showing that they were not in possession of the road upon which the accident occurred, and that the negligence, resulting in the accident, was not their negligence or that of their employees. In view, however, of their first plea of the general issue, leave to put in this special plea was refused by the State Court upon authority of the Jerka Case, 227 Ill. 95, 81 N. E. 7. And it is now insisted that no such proof was admissible before the Master; that the judgment in the State Court is binding; and that the Master had nothing to do but to accept it as proof of the liability and of the amount of the damages.

The date of the judgment in the State Court was February 1st, 1908. At that time the property of the Chicago Union Traction Company, formerly in possession of the Receivers and operated by them, had passed to purchasers at a sale under a bill to foreclose certain mortgages, the decree of sale providing (Par. XXXVI B) that the property should be sold subject to the condition that the purchaser should give security, in such amount and of such form and character, as the Court should direct, for the payment of any and all liabilities

of the Receiver or Receivers arising out of the operation of the street railways operated by the Receiver or Receivers which may not be met out of the cash funds remaining in the hands of the Receiver after the execution of the decree of sale; and the decree of confirmation setting apart the sum of Seven Hundred and Fifty Thousand Dollars to meet such liabilities, and providing that "the matter of ascertaining all such liabilities is hereby referred to Henry W. Bishop, Master in Chancery, who is hereby directed to give public notice, etc."; the time for the filing of the claims being August 1, 1908 or before. So that at the time these decrees were entered, the claim under consideration was still an unliquidated claim.

The proceedings of the claimant under these provisions of the decrees (and it is only under these decrees that I have now to do) are proceedings in rem, to subject to the claimant's claim a certain fund held by the Court out of the proceeds of the sale, or such other fund as may be forthcoming under the reservation made in the decree of sale. And a proceeding in rem, involving as it does the rights of all the parties to the fund, is rightfully limited to the procedure for ascertaining such liabilities set out in the decree, to-wit, a hearing before a Master of the Court, subject to the supervisory power of the Court over his findings; for this procedure was not only within the power of the Court to designate, but was calculated to bring the receivership to a speedy close. Any other procedure, such, for instance, as awaiting judgment in the State Courts—involving appeals to the Appellate and Supreme Courts of the State, and new trials where reversals were had, involving in turn further appeals and further new trials, such cases being litigated sometimes for ten years or more—would have indefinitely prolonged the receivership, and would have indefinitely kept tied up in the hands of the Court, money that belonged to others subject only to the liabilities herein named.

"Undoubtedly," says Justice Shiras, in Texas & Pacific Railway Company v. Bloom, 164 U. S. 639, 17 Sup. Ct. 218, 41 L. Ed. 580, "if this were a controversy between a party whose claim originated while a railroad was in the control of a receiver appointed during a foreclosure suit and a purchaser at a judicial sale decreed under that proceeding, the plaintiff's proposition [that it was within the power of the Court, on terminating the receivership, to make and provide for settlement of all claims of parties against the Receiver, growing out of his operation of the road, by intervention in that suit] would be a sound one. If the property sequestrated had gone to sale and a fund had been thus realized for distribution, then, upon notice appropriate to proceedings in rem, such a claimant would, in the absence of special and unusual circumstances, have been bound by the disposition so made."

Texas & Pacific Railway Company v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81, was a case against, not the Receivers, who had been dismissed from the suit, but against the railway company, to recover for injuries occurring during the receivership of the company, the suit having been an amicable one, at the instigation of the company, and for the company's own purposes, and those purposes having been accomplished, the property had been returned to the company, increased by the current earnings during the time of the receivership. In such a case, it was held that under the statute of Texas, and irrespective of statute, on equitable grounds (the rights of no

third persons as purchasers intervening), the acts of the Receiver might be well regarded as the acts of the company's own servants, rather than those of an officer of the Court; and a judgment obtained in the State Court and affirmed by the Supreme Court of the State, was affirmed by the Supreme Court of the United States.

"This action," says Chief Justice Fuller, "was in itself in no sense a proceeding in rem, and the State Court has held on other than Federal grounds that the company was directly liable. The property was no longer in the custody of the Circuit Court, and it had no possession that would be interfered with by the levy of an execution, so that the defendant in error was not obliged to resort to an intervention in that court before he could collect, unless he was personally bound to do so by force of an adjudication to that effect operating upon him. In this connection it should be observed that the property was not sold but merely redelivered to the company. No judgment in rem was entered; no fund existed through a sale in foreclosure; the earnings far exceeded the debts during the temporary management; and it did not appear that either in reference to expenses incurred in the administration or in the matter of claims resting on controverted priorities, or otherwise, there were any equities to be adjusted which required the further exercise of jurisdiction."

It seems to me that on general principles, followed in these two decisions, the Court not only had the power to adopt the procedure that was adopted, and to confine the parties to that procedure, but that, to bring about a speedy termination of the receivership, it was the duty of the Court to adopt the precise procedure that was adopted. Whether the claimant has a claim against the purchasers at the foreclosure sale, on the principles laid down in Texas & Pacific Railway Company v. Johnson, supra, or analogous principles, is a question not before me. What is before me, and what I am deciding here is, that if the claimant wishes to participate in the fund reserved by the Court, he must intervene according to the terms laid down for intervention; that is to say, must submit his case to the judgment of the tribunal named in the order of reservation.

The report of the Master is confirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes