## Chesapeake & Ohio Railway Company v. Warnock's Administrator.

(Decided May 1, 1914.)

### Appeal from Greenup Circuit Court.

Railroads—Damages—Evidence—Verdict Not Flagrantly Against —In an action for damages for the death of appellee's intestate, evidence examined and held that while it may be admitted that the weight of the evidence seems to be that decedent knew of the approach of the train, this Court will not usurp the functions of the jury by declaring from this evidence that they might not have found that he did not know of it, and it will not be said that the verdict is flagrantly against the evidence. (For former opinion, see 150 Ky., 74.)

PROCTOR K. MALIN and WORTHINGTON, COCHRAN & BROWNING for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is the second appeal of this case; the opinion on the former appeal will be found in 150 Ky., 74.

Upon the first appeal the judgment was reversed because of the failure of the lower court to give an instruction in substance, that if the plaintiff knew of the approach of the train and was injured in attempting to cross the track ahead of the same then the law was for the defendant and the jury should so find, even though they might believe that the defendant and its employes were negligent.

Upon the return of the case to the circuit court another trial was had which resulted in a hung jury, but upon a third trial a verdict for $7,000 was returned against the defendant, and from a judgment on that verdict this appeal is prosecuted.

The only ground presented for a reversal is that under the instruction given, as directed in the opinion upon the former appeal, the evidence of contributory negligence upon the part of the decedent was so clearly established as that the present verdict is flagrantly against the evidence. The determination of that question involves an analysis of the evidence on that issue.

As cited in the former opinion the decedent was employed in a general merchandise store at Fullerton in Greenup county, and the store faced Ferry Street on the east side of the railroad track, while the railroad platform faced Ferry street on the west side of the track. A shipment of cow-peas had been received that day for this store, and a shower having come up and the cow-peas being on the platform unprotected, the decedent, who was employed at the store, started across the track for the purpose of covering up the cow-peas and was struck by the train while crossing the track.

Immediately before starting across the track he had been standing near the store talking to Willard Boyle, who testified that he was facing down the railroad in the direction from which the train came and Warnock was looking toward the cow-peas; that when the shower came up Warnock started towards the cow-peas, that he (witness) saw the train coming, but the train did not whistle for the crossing, in fact did not whistle at all until the engine was right on Warnock as he was crossing the track, when it gave the danger signal, and just as it gave the signal Warnock jumped in an effort to escape, and as he jumped the train struck him; that he did not have any idea that Warnock was going to cross the track, and if he had thought so he would have stopped him.

L. Morgan testifies that he saw Warnock start across the track from where he had been talking with Boyle, and just as he got in the center of the track the train overtook him, and when it struck him he was just outside of the rails; that just before it struck him it whistled several short blasts, and just as it whistled Warnock looked down the track, but did not have time to get out of the way; that no bell was rung or whistle sounded except these short blasts before the train struck Warnock. One or more other witnesses testify that Warnock did not look towards the train until the danger signal was given.

The engineer testified that when he first saw Warnock he was fifty or sixty feet from the tracks, that is fifty or sixty feet from where he undertook to cross the track, and that he was running not directly across the tracks but in a kind of a circle as if he was trying to get across ahead of the train.

The conductor testified that he saw him start from the store, and the engineer commenced to whistle at him, and that he ran in the same direction with the train and tried to get in front of it.

Miss Braden says, that Warnock was running across the track from the time he left the store until struck.

Up to this point the evidence was in substance the same as it was on the first trial, but on the last trial in addition to the foregoing evidence the defendant introduced its agent, Griffin, who testified that between the date of the accident and the death of Warnock that Warnock had told him that he saw the train coming up, but thought that he could get across ahead of it. The defendant also introduced one Swearengen, who testified that Warnock said that he had seen the train coming, but thought he could get across, but missed his calculation; but on cross-examination he materially qualified that statement by saying what Warnock said was, "After I saw the train I did not have time to get off."

While it may be admitted that the weight of the evidence seems to be that Warnock knew of the approach of that train, we are unwilling to usurp the functions of the jury by declaring from this evidence that they might not have found that he did not know of it. The fact that Griffin, defendant's agent at the time of the accident and ever since, failed to give this most important testimony upon the first trial, or to disclose same to the attorneys of his employer, might well have caused the

jury to look upon his evidence on this point with suspicion; and the fact that Swearenger, on cross-examination, so qualified and weakened his original statement as to make it practically worthless was doubtless taken into the estimate by the jury.

The fact that Warnock never looked toward the approaching train until after the danger signal was given is certainly strongly persuasive that he had not previously seen the train.

We are unwilling to say that the verdict is flagrantly against the evidence.

Judgment affirmed.