## Louisville & Nashville Railroad Company v Meadors' Administrator.

(Decided October 2, 1917.)

### Appeal from Whitley Circuit Court.

1. Commerce—Interstate Commerce—Work of Employee.—A member of a switching crew assisting in placing on a track for the purpose of taking them to a point within the state, three boarding cars, which had come from a point outside the state and had reached their destination and had then been placed on a particular track, was not then engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, since the interstate movement of the cars had terminated before the switching began.

2. Commerce—Interstate Commerce—Work of Employee.—Where a railroad and an employee are engaged in switching a car containing an interstate shipment for the purpose of transporting such shipment to its destination, they are both engaged in interstate commerce within the meaning of the Federal Employers' Liability Act.

3. Trial—Directing Verdict for Defendant.—Where in an action for death, plaintiff elected to proceed under the State law, and the uncontradicted evidence of unimpeached witnesses, showed that at the time of the injuries resulting in his death, the railroad and the decedent were engaged in interstate commerce, defendant's motion for a directed verdict should have been sustained.

H. H. TYE and BENJAMIN D. WARFIELD for appellant.

STEPHENS & STEELEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this suit for damages for the death of Andy Meadors, his administrator recovered of the defendant, Louisville & Nashville Railroad Company, a verdict and judgment for the sum of $4,000.00, and the railroad company appeals.

After setting out his cause of action, plaintiff alleged that he did not know whether the work in which the decedent was engaged, at the time of his injuries, was interstate commerce or intrastate commerce. Defendant's motion to require plaintiff to elect whether he would proceed under the state law or under the Federal Employers' Liability Act, was sustained, and plaintiff elected to prosecute his cause of action under the law of Kentucky.

It is insisted for the defendant, that the evidence conclusively showed that the defendant was engaged and the decedent was employed in interstate commerce at the time of the injuries resulting in his death, and that the trial court erred in refusing the peremptory instruction, asked by the defendant.

The evidence shows, that at the time of the accident, decedent was a switchman in the employ of the defendant, an interstate carrier, in its yards at Corbin. There are three yards there, and the accident occurred in the middle yard, which consists of fifteen tracks connecting with the main track, and a sixteenth track, which was a mere spur connecting with the main track at one end. Decedent was a member of a switching crew who were engaged in switching four cars. Of these cars, three were boarding cars, billed from Pensacola, Fla., to Corbin, Ky., and had been brought in the night before from Etowah, Tenn., and left on track fifteen. During the night they were switched to track fourteen and the purpose of switching these cars at the time of the accident was to place them on track sixteen, so that they could subsequently be taken to Barbourville, Ky. The fourth car was a refrigerator car and contained a 60-pound box of hats which were being shipped from Appalachia, Va., to East Bernstadt, Ky. This shipment had come in on a local train from Middlesboro and had then been transferred to the refrigerator car in question. The purpose of switching the refrigerator car was to place it on track seven, where it was to form part of a local freight train bound for points in Central Kentucky. The four cars were pulled out of track fourteen. The engine backed up and kicked the three boarding cars to track sixteen.

Meadors was on the head car and the brake on that car was set. The cars rolled about half a car length and stopped. Meadors then unwound the brake and walked towards the other car. His back was towards the engine. The engine shunted the cars again, and Meadors staggered and fell over the end of the car on which he was standing. The other two cars behind passed over and killed him.

It is argued by the railroad company, that Meadors was employed in interstate commerce because he was engaged in switching the three boarding cars, which were interstate cars. This proposition cannot be sustained. While it is true that the three boarding cars were billed and came from another state, they were billed to Corbin. They reached Corbin the night before. They were first placed on track fifteen and subsequently removed to track fourteen. This was clearly the end of their interstate journey, and their movement at the time of the accident formed no part of that journey, but was for the sole purpose of placing them on track sixteen, so that they could be taken conveniently to Barbourville, a point in this state, thus making their movement a part of a new independent intrastate journey. Lehigh Valley R. Co. v. Barlow, 37 Sup. Ct. Rep. 515; Chicago B. & Q. R. Co. v. Harrington, 241 U. S. 177, 60 L. Ed. 941, 36 Sup. Ct. Rep. 517, 11 N. C. C. A. 992.

The movement of the refrigerator car presents a different question. A railroad is engaged in interstate commerce the instant it begins the carriage of an article from one state to another and the character of the commerce continues without cessation, until such article reaches its destination. McNeil v. Southern Ry. Co., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142; In re Greene, 52 Fed. 104; Chicago M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522; United States v. Central of Georgia Ry. Co., 157 Fed. 893; Belt Ry. Co. v. United States, 168 Fed. 542; United States v. Boyer, 85 Fed. 425; and for a like reason, an employee assisting in the movement of such article is necessarily employed in interstate commerce. Here the interstate shipment was first brought from Virginia to Middlesboro. It was there transferred to a local train and brought to Corbin, where it was placed in the car in question, to be taken to its destination at East Bernstadt. It is immaterial that its interstate journey was thus interrupted. The character of the shipment continued. And since the railroad and

Meadors were, at the time of the accident, moving the car containing such interstate shipment for the purpose of transporting such shipment to the end of its interstate journey, it cannot be doubted that the railroad and decedent were then engaged in interstate commerce.

But the point is made that under the rule announced in the case of L. & N. v. Parker, 242 U. S. 13, the judgment should stand because of defendant's failure to ask to go to the jury, on the question whether the decedent was engaged in interstate commerce. In interpreting that opinion, however, this court has held that the rule therein announced, applies to cases where the evidence is conflicting and does not apply where the evidence is all one way and the witnesses are unimpeached. Cincinnati, N. O. & T. P. Ry. Co. v. Hansford, 173 Ky. 126. Here the evidence that the company and decedent were engaged in switching a car containing an interstate shipment, for the purpose of its transportation to its final destination, is uncontradicted and the witnesses stand unimpeached. Under these circumstances, the request for the peremptory, properly raised the question that the case pleaded and relied on by plaintiff, was not proved, and the peremptory should have been given. Cincinnati, N. O. & T. P. Ry. Co. v. Hansford, *supra*. No other question is passed on.

Judgment reversed and cause remanded for a new trial consistent with this opinion.