## Johnson's Administrator v. Louisville & Interurban Railroad Company.

(Decided February 27, 1923.)

### Appeal from Jefferson Cricuit Court (Common Pleas Branch, Third Division).

1. Railroads—Dangerous Character of Crossing Held for Jury.—On conflicting evidence with respect to plaintiff's contention as to the unusually dangerous character of a railroad crossing, the questions whether it was unusually dangerous, and, if so, whether other precautions in addition to the customary sounding of the car whistle and ringing of the bell should have been taken, held properly left to the jury.

2. Railroads—Evidence Held to Show Only Negligence of Automobile Driver Killed by Interurban Car.—In action for death of driver of automobile struck by interurban car at crossing, evidence held insufficient to show that the customary and required signals were not given, or that the car was running at an unusual or dangerous rate of speed, but to support a finding that decedent's death was caused by his own negligence.

3. Evidence—Uncontradicted Testimony Accepted as True.—Where testimony of motorman of interurban car that he maintained a lookout while approaching a crossing was uncontradicted by any witness or by any circumstances appearing in the record, it must be accepted as true.

4. Appeal and Error—Use of Written Statements of Witnesses to Refresh Recollection Not Prejudicial.—Appellant held not prejudiced in any substantial right by permitting witnesses to refresh their

memory by using written statements previously given by them where the court told the jury the statements were limited to such use.

5. Evidence—Non-expert Could Not Testify as to Means which Might Have Been Employed by Motorman.—It was not competent for a witness not an expert to testify as to what other means than those used by the motorman of an interurban car might have been employed for the safety of persons using a railroad crossing.

W. W. THUM and CHAS. C. WHEELER for appellant.

ALFRED SELLIGMAN and STRAUS, LEE & KREIGER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In a collision between the automobile in which he was riding and a car of the appellee, Louisville and Interurban Railroad Company, occurring on a public grade crossing at the intersection of the Taylorsville turnpike and the latter's railroad track near Lennert station, six and a half miles from Louisville, W. H. Johnson, a resident of that city, was so injured that he died two days later. Shortly thereafter the appellant, G. W. Johnson, following his appointment and qualification as administrator of the decedent's estate, brought this action against the appellee in the court below seeking the recovery of damages to the amount of $50,000.00, for the latter's death, alleging in the petition that it was caused by the negligence of its motorman in charge of the car.

The answer of the appellee denied any negligence on the part of its motorman and pleaded contributory negligence on the part of the decedent, alleging that but for same the collision resulting in his death would not have occurred. The plea of contributory negligence was denied by the appellant's reply. The trial of the case in the court below resulted in a verdict and judgment for the appellee; complaining of which and of the subsequent overruling of his motion and grounds for a new trial by that court, the administrator has appealed.

It was contended by the appellant on the trial in the court below that the crossing in question was an unusually dangerous one; that the motorman operating the car failed, in approaching the crossing, to give the statutory or customary signals of its coming; and that he was running the car at an unusual and dangerous rate of speed.

It appears from the map and photographs found in the record, that at the place of the accident the Taylorsville turnpike runs in a southeasterly direction towards Jeffersontown, and that the track of the appellee's railroad there crosses the turnpike at grade and in a somewhat diagonal course. It also appears that the turnpike roadway has a width of 26 feet, the macadamized part of it a width of 18 feet, and that the roadway included in the crossing and approaches is occupied by 130 linear feet of railroad track. Such obstructions as might have tended to prevent one in approaching the crossing in an automobile as did the decedent, from seeing a car coming on the railroad track as did that of the appellee, were not within or on the side of the roadway, but on ground along and adjoining the railroad right of way. These obstructions consisted of a four foot hedge, a few scattering trees and two or three telephone poles.

But it is fairly apparent from the map and photographs that for a distance of 150 or 200 feet before reaching the crossing, the objects mentioned could not have obstructed the vision of one looking in the direction of the approaching car, who like the decedent was approaching the crossing in an automobile by traveling in the direction of Jeffersontown; and the appellee's motorman, who was the only eye-witness of the accident, testified without contradiction, that when first seen by him the decedent's automobile was about 200 feet from the crossing. It would seem, therefore, that within that distance from the crossing there was nothing to prevent the decedent from seeing the car before its arrival at the crossing, and that by looking in that direction he could have done so as readily as his automobile was seen by the motorman on the car.

There was, however, a considerable amount of evidence in behalf of the appellant conducing to prove that the crossing is a very dangerous one and of such character as required of the appellee in using it greater care for the safety of travellers on the turnpike than is customarily employed at the average crossing. On the other hand, there was also evidence for the appellee tending to prove that the crossing in question is not more dangerous than the average railroad crossing. The question as to whether the crossing was or not an unusually dangerous one was submitted to the jury by an instruction from the trial court, which, after correctly defining the reciprocal duties owing by the decedent and motorman in ap-

proaching and going upon the crossing, the former as a traveller of the turnpike in his automobile and the latter as operator of the appellee's interurban car, in substance told them that if they found from the evidence that the crossing was an unusually dangerous crossing and that by reason thereof the signals of the car for the crossing customarily given by the sounding of the car whistle and ringing of the bell, were insufficient to give notice to persons at or near the crossing of its approach, and this was known or by the use of ordinary care could have been known to the appellee, then it was its duty and that of the mortorman to use such other means to prevent injury to travellers at the crossing, as in the exercise of a reasonable judgment by ordinarily prudent persons operating interurban railways, might be considered necessary. In view of the appellant's contention respecting the dangerous character of the crossing and of the conflicting nature of the evidence regarding same, we think the questions as to whether it was unusually dangerous, and, if so, whether other precautions in addition to the customary sounding of the car whistle and ringing of its bell in approaching the crossing, should have been taken by the appellee or its motorman for the safety of persons at the crossing, were properly left by the trial court to the determination of the jury.

The appellant's complaint that the customary and required signals of the car's approach to the crossing were not given, does not seem to be sustained by the evidence. On the contrary, the great weight of the evidence was to the effect that the required signals were given from the car as it approached the crossing; that is, beginning just before the car arrived at the whistling post with one long blast of the whistle as the signal for the station, followed when the car reached the whistling post by two long and two short blasts of the whistle as the signal for the crossing, from which point until the crossing was practically reached by the car, there was an almost continuous sounding of the car whistle, accompanied much of the way, and continuously for the last 150 feet of it, by the ringing of the car bell or gong.

The giving of these signals from the car for the crossing in the manner stated was proved by the testimony of Young, the conductor, and Kelly, motorman on the car, and also by the witnesses, Kennedy, Evans and Mrs. Hiker, all passengers on the car at the time of the acci-

dent, which enabled them to testify as to the facts stated, as did the conductor and motorman, from their personal knowledge of them. There was an attempt by the appellant to prove by his witnesses, Roderer and Drescher, a failure on the part of those in charge of the car to give the necessary signals of its approach before reaching the crossing. An examination of the evidence furnished by these witnesses will show, however, that they were without opportunity to learn the facts respecting the car signals that were known to the appellee's witnesses. It appears from the testimony of Roderer that at the time of the accident he was in his barn 200 feet from the turnpike. He did not see the car before its collision with the automobile, but heard one blast of its whistle, and about the same time or quickly thereafter heard the crash of the collision. He did not testify, however, that there were not other blasts of the whistle, or no ringing of the car gong, but, in substance, that if either of such further signals was given, it was not heard. What has been said of Roderer's testimony may also be said of that of Drescher, who, when the collision occurred, was in his barn 500 yards distant. According to his testimony he did not see the car or hear any sound from its whistle or bell before the collision, but did hear the crash of the collision. It will thus be seen that the evidence in regard to the absence of signals from the car in approaching the crossing, introduced by the appellant, was purely of a negative character and for that reason entitled to little weight when compared with that of the positive character furnished by the appellee's witnesses. In brief, this feature of the case may be disposed of with the statement that there was, in fact, no evidence that conduced to prove any negligence on the part of the motorman operating the appellee's car in failing to give the statutory signals required to warn the decedent or other travellers of the turnpike at or near the crossing of its approach thereto.

It is equally patent from an examination of the evidence that it wholly fails to show any negligence on the part of the motorman either in the matter of failing to maintain, on the occasion of the accident, a proper lookout for the presence of the decedent or other travellers at or near the crossing, or in running the car at an unusual or dangerous rate of speed in approaching the crossing. As to the first of these propositions, it is suf-

ficient to say that as the motorman's testimony that he did maintain such a lookout was uncontradicted by any witness, or by any circumstance appearing in the record it must be accepted as true. The second of these propositions is also without support from the evidence. On the contrary it appears from the testimony of the appellee's conductor, motorman, and the passengers, Kennedy and Evans, that in approaching the crossing and upon reaching it the speed of the car was only from seven to ten miles an hour. The other passenger, Mrs. Hiker, also testified that its speed was greatly reduced before reaching the crossing; and that such speed was not exceeded was demonstrated by the undisputed fact that the car was stopped within fifteen or twenty feet after striking the automobile of the decedent.

It yet remains for us to determine whether the decedent's death was caused by his contributory negligence. As before stated the motorman, Kelly, alone witnessed the collision, and if his uncontradicted statement as to how it occurred is accepted, the accident was wholly without fault on his part and altogether due to the negligence of the decedent. According to Kelly's testimony when the decedent's automobile was first seen by him it was about 200 feet from the crossing and coming towards it. From the situation as shown by the map and the testimony of witnesses, as well, at that distance from the crossing and until it was reached by the automobile, if he had looked or listened there was nothing in the way of the decedent's seeing the car or hearing its signals as it approached the crossing before going upon it with his automobile. This, as testified by Kelly, his conduct indicated he was about to do, for according to the testimony of the latter if he had continued the course of his automobile in the direction it was going as the car got near the crossing, it could and would have gone over the crossing immediately behind the car in safety; and this Kelly believed he was about to do. But, as Kelly further testified, instead of pursuing this course, the decedent unexpectedly to him, suddenly and as the car was within a few feet of the crossing, turned the course of his automobile as if to pass over the crossing in front of the car, and this he did and thereby caused the collision resulting in his injuries and early death. Kelly also testified that in the emergency thus presented, it was impossible for him to stop the car before it struck the auto-

mobile, though by throwing off the electric current and applying the emergency brakes, he at once attempted to do so. His testimony seems to be fully corroborated by the physicial facts attending the accident, for the car was stopped within fifteen or twenty feet of where it struck the automobile, and the fact that it struck the automobile near the front wheel supported Kelly's testimony that the collision was caused by the decedent's suddenly running the automobile in front of the car.

Some explanation appears of the apparently reckless conduct of the decedent at the time of the accident, from the evidence showing him to have been a victim of the drink habit, that whiskey was found in the wrecked automobile; and it was testified by a witness who met him a short distance from the crossing, that he then appeared to be drinking and had and offered him whiskey; and that upon leaving the witness he ran his automobile unsteadily.

We can well understand from the evidence as a whole why the jury should have found by their verdict that the death of the decedent was caused by his own negligence.

The appellant's complaint of the use on the trial of written statements previously given by the witnesses, Williams, Roger and Earl Tyler, cannot be sustained. The papers were not used to contradict the witnesses, or to obtain any additional testimony to that given by them on the trial. The only use made of them was to refresh the memory of the witness, and to such use the court told the jury they were limited. The appellant could not have been prejudiced in any substantial right by their use. Left Fork Coal Co. v. Owens' Admrs., 155 Ky. 212; Hines, D. G., etc. v. May, 191 Ky. 493.

The rejection of the testimony of the witness Yates, complained of by the appellant, was proper. He failed to qualify as an expert and therefore it was not competent for him to testify as to what other means than those used by the appellee might have been employed for the safety of persons using the crossing. Veach v. L. & I. R. R. Co., 190 Ky. 688; Louisville, Cincinnati & Lexington R. R. Co. v. Comth., 80 Ky. 143; Hughes Ev., chap. 1, sections 1-6.

The instructions given by the court correctly stated all the law necessary for the proper guidance of the jury.

Judgment affirmed.