## Louisville & Nashville Railroad Company, et al. v. Slusher's Administrator.

(Decided January 25, 1927.)

### Appeal from Bell Circuit Court.

1. Death—$10,000 for Death Held Not Excessive.—In an action for the death of a man 19 years old, evidence that he was earning $4 per day at the time of his death held to warrant a verdict for $10,000.

2. Railroads—Finding Headlights of Railroad Motorcar were Not Burning Held Warranted.—In an action for the death of one run over by a railroad motorcar, evidence held to warrant conclusion that the headlights were not burning at the time.

3. Railroads—Whether Deceased was Struck by Motorcar at Crossing or Some Distance Away Held for Jury.—Whether decedent, run over by railroad motorcar, was struck at a crossing or while lying across the track some distance therefrom, held for the jury.

4. Appeal and Error—Admission of Evidence, Not Considered in Court's Instructions, Held Not Prejudicial.—In an action for the death of one run over by a railroad motorcar, admission of evidence as to the use of the track between a crossing and the place from which he started walking along the track, and the former occupancy of the ground, on which the track was laid, by a county road, held not prejudicial to defendants, where not taken into consideration by the court's instructions.

5. Railroads—Refusal of Peremptory Instructions Held Not Erroneous as Disregarding Uncontradicted Testimony as to Injury by Railroad Motorcar.—Overruling motion for peremptory instructions for defendants, in an action for the death of one run over by a railroad motorcar, held not erroneous as disregarding positive, uncontradicted testimony of eye-witnesses, corroborated by witnesses on the ground, that deceased was lying on the track some distance from a crossing, at which he was alleged to have been struck, in view of testimony as to finding an uninterrupted trail of blood from within three or four feet of the crossing to the point where the body was found.

6. Evidence—Uncontradicted Evidence of Facts Precluding Recovery Cannot be Disregarded.—Neither the court not jury may disregard evidence of a state of facts showing a party not entitled to recover, where not contradicted by competent evidence.

7. Railroads—Uncontradicted Evidence Deceased was Discovered on Railroad Track too Late to Avoid Injury Warrants Directed Verdict.—Uncontradicted evidence, standing alone, that deceased was lying on the track when discovered by the crew of a railroad motorcar, and that it was then too late to avoid running over him, would entitle defendants railroad and coal companies to a directed verdict.

8. Railroads—Refusal of Peremptory Instruction for Railroad, Sued for Death Caused by Motorcar Operated by Coal Company, Held Erroneous.—In absence of evidence that a railroad company, operating freight cars for hauling coal over a certain railroad, owned, controlled, or managed the right of way and roadbed or was responsible for the operation of a coal company's cars thereover, the court should have sustained its motion for a peremptory instruction in an action against it and the coal company for the death of one run over by a motor car in charge of the latter's employees.

9. Appeal and Error—Holding that Court Erred in Denying Peremptory Instruction for Railroad in Death Action Held Not to Require Reversal of Judgment Against Codefendant Coal Company.—A holding that the court erred in denying a peremptory instruction for a railroad company, in an action against it and a coal company for the death of one run over by a motorcar on a railroad track, held not to require reversal of a judgment for plaintiff as to the

coal company, in the absence of error prejudicial to its substantial rights.

10. Pleading—Allegation that Decedent was Killed by Motorcar Propelled by Employees of "One or Both" of Defendants Held Not to State Cause of Action Against Either.—Allegation of petition that decedent was killed by a motorcar propelled by employees of defendants railroad and coal companies, "one or both of them," held insufficient alone to state a cause of action against either.

11. Pleading—Alternative Allegations Must Relate to Facts, Not Parties.—Alternative allegations must relate to facts and not parties.

12. Railroads—Allegation Death Happened by Defendants' Negligent Operation of Railroad Motorcar Held to State Cause of Action Against Both.—Allegations of petition that intestate's death happened by defendants railroad and coal companies, their agents and employees, operating a motorcar without lights, signals, or warnings, while intestate was walking along the track after dark, stated a cause of action against both defendants.

13. Trial—Instruction Not Requiring Ordinary Care by Decedent Held Erroneous, in View of Evidence of His Contributory Negligence. —In an action for the death of one run over by a motorcar on a railroad track, an instruction not requiring decedent to have used ordinary care for his own safety held erroneous, in view of evidence warranting conclusion that he was contributorily negligent though not sitting or lying on the track at the time as defendants' witnesses testified.

14. Trial—Instruction Should Require Belief "From Evidence" that Defendant was Negligent.—Court should require jury to believe "from the evidence," not merely to believe that defendant was guilty of some acts of negligence, before they can find it guilty thereof.

15. Trial—Instruction Requiring Finding that Motorcar Struck Decedent Because of Failure to Have Lights Shining Held Erroneous as Assuming Fact.—In an action for the death of one run over by a railroad motorcar, an instruction requiring a finding "that, because of the failure to have said lights shinning and throwing light, the car ran upon and struck decedent," held erroneous as assuming a fact.

16. Appeal and Error—Erroneous Instruction Relating to One Defendant Held Not Prejudicial to Codefendant in Death Action.—An instruction not requiring the jury to believe certain things "from the evidence" to find defendant railroad company guilty of negligence, in an action for the death of one run over by a motorcar, held not prejudicial to codefendant coal company whose employees were operating the car.

WOODWARD, WARFIELD & HOBSON, A. M. WARREN and LOW & BRYANT for appellants.

N. R. PATTERSON and DAVIS & BETHURUM for appellee.

Opinion of the Court by Judge Logan—Reversing.

Appellee's intestate, I. D. Slusher, was killed by a motor car operated by the appellant, Black Star Coal Company, over a railroad running from Blackmont to Black Star, a distance of about seven miles. The intestate's death occurred in November, 1924, at or near a railroad crossing about one-half mile from Blackmont on the railroad mentioned. Suit was instituted in the Bell circuit court by his administrator against the L. & N. Railroad Company and the Black Star Coal Company seeking to recover damages for his death. A trial before a jury resulted in a verdict for $10,000.00 against both of the appellants.

The petition sets out that the L. & N. Railroad Company is a corporation authorized to carry on the business of a common carrier for hire; that the Black Star Coal Company is a corporation authorized to carry on the business of mining and such business as is incident thereto. It is alleged that appellee's intestate, a young man nineteen years of age, started from Blackmont, "traveling along a line of railroad owned and operated by the defendants leading up Pucketts creek, and that some half mile from the station of Blackmont the plaintiff's intestate was run over and instantly killed by a motor car propelled by the employees of the defendant, one or both of them." It is then alleged that at the time young Slusher was killed he was traveling along said railroad track extending along Pucketts creek, and that said track theretofore and for several years had been continuously used by the traveling public for going up and down said Pucketts creek; that said creek was a populous mining section, with a great many people living thereon, and that said railroad track was constantly, with the full knowledge of the defendant, used by the traveling public walking backward and forward thereon; that at the time intestate was killed he was walking along said track after dark, and "that the defendants, their agents and employees, in propelling said motor car which killed him, were operating same at a high rate of speed and without any light or signal or warning of any kind, and that said accident to his intestate happened by the defendants, their agents and employees operating said motor car without any lights or signal or warning, sud-

denly running on or over said intestate, then and there killing him.''

The appellants filed a joint answer to the petition in which the material allegations of the petition were denied. It was admitted, however, in the answer that appellee's intestate was run over and killed by a motor car on the railroad track leading up Pucketts creek, but it was denied that he was traveling along said railroad track when he was killed. There is a further plea of contributory negligence.

Thereafter appellee filed his amended petition in which he adopted the allegations of his original petition with the modification that at the time his intestate was killed the said intestate was on a crossing where the said railroad mentioned crosses the main county highway leading up Pucketts creek, and that at the time the car struck appellee's intestate he was on said crossing and the car came in contact with his body at a time when intestate was on said county highway crossing. The amended petition was filed over the objections of appellants and the affirmative allegations were controverted of record by agreement of parties.

The jury having found a verdict against both appellants, they filed a motion and grounds for a new trial. They rely upon a number of errors as follows: (1) The damages are excessive. (2) The verdict of the jury is not sustained by sufficient evidence and is contrary to law. (3) The verdict is contrary to the instructions. (4) Incompetent evidence admitted in favor of appellee. (5) Competent evidence excluded which was offered by appellant. (6) A motion for a peremptory instruction should have been sustained and the jury directed to return a verdict for the appellants. (7) Errors in instructions.

There is no basis for the complaint that the damages awarded by the jury are excessive. If appellee was entitled to recover for the death of his intestate the amount awarded him is supported by the evidence, which shows that young Slusher was earning $4.00 per day at the time of his death. The second ground is more serious and requires a brief summary of the evidence offered by the appellee in support of his cause of action as well as the evidence offered by appellant. Pucketts creek runs between two mountains and the valley in which it

runs is narrow. There are from four to six thousand people living on this creek between Black Star and Blackmont. They are gathered together in coal camps and there are a number of these little camps along this railroad. Appellee's intestate was killed after dark and it was snowing and raining at the time. Young Slusher had not been seen for some hours prior to the time he was killed, but he had been with a number of other young men during the afternoon and some of them were drinking whiskey. The proof is that intestate had taken at least one drink and there is some evidence that he refused to drink any thereafter. At the time he was killed he had a bottle in his pocket which had contained whiskey. He also had a forty-five pistol in his pocket and another pistol which appears to have been his was found on the track near where he was struck. Appellee shows by a large number of witnesses living along the track between Black Star and Blackmont that the motor car which was operated for passengers on this railroad had no headlight. It is shown by the great weight of the evidence that at the time it left Black Star it had no lights except a dim light inside the car. It was seen by more than a dozen witnesses as it proceeded on its way towards Blackmont, and those who testified for appellee state without exception that there were no headlights showing. The witness who last saw the car before it reached the point where Slusher was struck states that it was about 300 yards from the point where decedent was killed when he saw it and that no headlights were showing. There is some evidence that when it came into the station of Blackmont there were no headlights. No witnesses introduced by the appellee saw the accident. Some of the witnesses say that the place where the body was found was from 50 to 100 feet from the crossing. The evidence for appellee conduces to show that there were no headlights showing on the car immediately before decedent was struck and that no headlights were showing when the car reached the station something less than half a mile from the point where the boy was struck.

There were three eye-witnesses to the accident who were on the car at the time. One of these was the motorman, another the conductor and another a passenger, all of whom had been on the car from the time it left Black Star. These witnesses testified that the headlight on the

car was burning and throwing light ahead from the time it started until it reached a point near Black Snake, at which time there was some trouble with the battery box which caused the light to flicker and grow dim. The motorman slowed the car down and remedied this trouble and from thereon the light showed as usual. The evidence of these three witnesses on the question of headlights is contradicted by all of the witnesses who testified touching this matter for the plaintiff, and there was sufficient evidence for the jury to reach the reasonable conclusion that the headlights were not burning at the time of the accident. These three witnesses for appellants testified that they were looking down the track as they approached the crossing; that the car was running from ten to fifteen miles per hour; that the crossing was in a curve on the track and for that reason the light did not follow the track. They testify that just after the car passed the crossing they discovered an object on the track which appeared to be white and which was from six to seven rails length from the crossing, but it was not discovered on account of the light not following the track until the car was within about two rail lengths of the object which they saw on the track. Immediately after discovering this object on the track the motorman put on the brake in an effort to stop the car but it was impossible to stop it. The car passed over Slusher about eight or ten feet before it stopped. The car was stopped and the three witnesses got out and went back to the object and found that it was a man who had been run over; they did not disturb the body but proceeded on their way to Blackmont, where they reported the accident. These three witnesses state that when they saw Slusher he was lying down across the track. If their evidence is true then there would be no liability for the death of appellee's intestate in this case, as his death was caused by his own negligence in lying down on the track. These witnesses state that everything was done which could have been done after his peril was discovered and that the accident could not have been avoided.

There is evidence, however, which shows that the decedent had a severe cut on his head and there was considerable blood where he was found, and it is generally agreed by all the witnesses that there was blood for a few feet on the railroad towards the crossing from the point

where the body was found.     This of itself would not be sufficient to show that decedent was killed at the crossing, but there are at least two witnesses who say that they traced the blood from the point where the body was found to within three or four feet of the crossing.     If this is true it is a contradiction of the testimony of the three eye-witnesses, and that would make it a question for the jury as to whether decedent was struck at the crossing. According to the testimony of the eye-witnesses decedent was killed more than 100 feet beyond the crossing, but the witnesses who saw the blood on the ties and along the track say that it extended from within three or four feet of the crossing to the point where the body was found.     This brings up a disputed question of fact which is for the jury.     If there was enough evidence to justify the jury in believing that the car, without headlights burning, struck decedent at the crossing, it makes a case for the jury, and it cannot be said that there was no evidence to support the finding.     What has been said about the second ground in the motion for a new trial is applicable to the third ground, which is substantially a repetition of the second.

The fourth and fifth grounds in the motion for a new trial relate to incompetent evidence admitted and competent evidence refused.     We find that no evidence was admitted over the objection of appellants to the prejudice of their substantial rights.     It is true that evidence was introduced as to the use of the track between the crossing and Blackmont, and there was evidence that the track was laid on ground formerly occupied by a county road. The instructions of the court did not take into consideration this evidence, and we do not see how it was prejudicial to the rights of appellants.

The sixth ground in the motion for a new trial is that the court erred in overruling the motions of defendants for peremptory instructions at the conclusion of appellee's evidence, and coupled with this is the ground that the court erred in overruling the motions of the defendants for peremptory instructions at the conclusion of all the testimony.     What has been said about the evidence determines the matter of whether peremptory instructions should have been given to find for the appellants at the conclusion of all the testimony unless there is some

other feature of the evidence which has not been considered. It is argued by counsel for appellants that in overruling motions for a peremptory instruction the lower court disregarded the positive and uncontradicted testimony of all the eye-witnesses whose evidence was corroborated by all the witnesses who were on the ground where the accident happened. It is also insisted that neither the court nor the jury has a right to disregard uncontradicted evidence of unimpeached witnesses. This is all very true, but can it be said that the evidence of the eye-witnesses was uncontradicted when there was evidence of other witnesses tending to show that decedent must have been struck on the crossing because the physical facts contradicted the evidence of the eye-witnesses? Counsel for appellants seem to overlook the evidence of the witnesses who say that the blood commenced its trail within three or four feet of the crossing and continued uninterruptedly to the point where the body was found. The case of Sinclair's Admr. v. Ill. Central Railway Co., 129 Ky. 828, 112 S. W. 910, is not in point, and the same may be said of the case of Johnson's Admr. v. L. & I. R. R. Co., 199 Ky. 524, 251 S. W. 843; L. & N. v. Meadors' Admr., 176 Ky. 765, 197 S. W. 440; Bevins' Admr. v. C. & O. R. Co., 190 Ky. 501, 227 S. W. 794; Deboe v. Brown, 198 Ky. 275, 248 S. W. 855; Brown v. Johnson & Johnson, 116 S. W. 273. All of these cases hold that when a witness testifies unequivocally to a fact and there is nothing in evidence to warrant the jury in rejecting it and he is in nowise contradicted or impeached the jury is not at liberty to disregard his testimony. When a state of facts is proven showing that a party is not entitled to recover and these facts are not contradicted by competent evidence neither the jury nor a court may disregard the evidence. No such state of facts is proven in this case except by the witnesses for appellee, and this being true it was a question for the jury to determine whether the statements given in evidence by the three eye-witnesses were true.

It is further argued that there was no contradiction of the evidence that the decedent was lying on the track when discovered and that it was then too late to prevent the car running over him, and that upon this evidence alone appellants were entitled to a directed verdict in

their favor. It is true that upon this evidence alone appellants would have been entitled to a directed verdict in their favor, but this evidence does not stand alone, as we have pointed out above. Therefore the cases cited by appellants in their brief are not in point.

If there was no evidence showing that the right of way and road bed were owned or were under the control of the defendant, L. & N. R. R. Co., the motion for a directed verdict in its favor should have been sustained. It seems to be admitted that the Black Star Coal Company operates its cars over the railroad in question, and it is not disputed that its agent and employees were in charge of the car when decedent was killed. It is also in evidence that the L. & N. R. R. Co. operates freight cars for the purpose of hauling coal over this road, but this is not evidence that the right of way and road bed are owned by the L. & N. R. R. Co., or that said company has the control and management of said railroad. There is nothing to show that the L. & N. R. R. Co. was responsible for the operation of the cars of the Black Star Coal Company. We are of the opinion, therefore, that the court should have sustained the motion for a peremptory instruction as to the L. & N. R. R. Co.

This does not mean, however, that the judgment must be reversed as to the appellant Black Star Coal Company unless there was some error prejudicial to its substantial rights. Loving v. Comlth., 103 Ky. 534; Lou. S. R. R. v. Tucker, 105 Ky. 492; Sellards v. Zomes, 5 Bush 90; Buckles v. Lambert, 4 Met. 330; McGee v. Vanover, 148 Ky. 737.

It is insisted by the appellants that the court erred in overruling their motion to require the appellee to elect as against which of the appellants he would prosecute the action. It is true that the petition near the beginning of the paragraph in which the allegation of negligence is found alleges decedent was killed by a motor propelled by the employer of the defendants, "one or both of them." Standing alone without modification this language would not have been sufficient to state a cause of action against either of the appellants. It is true that alternative allegations must relate to facts and not parties. Brown v. Ill. Central R. R. Co., 100 Ky. 525.

An examination of the petition, however, discloses the following allegation:

"He says that at the time his intestate was killed he was walking along said track after dark and that the defendants, their agents and employees in propelling said motor car which killed him, were operating same at a high rate of speed and without any lights or signal or warning of any kind, and that said accident to intestate happened by the defendants, their agents and employees operating said motor car without any light or signal or warning suddenly running on and over said intestate then and there killing him."

This allegation is against both appellants, and appellee was entitled under this allegation to make out his case against both if he could do so. Some complaint is made about the instructions, and we have given careful consideration to them. The first instruction is erroneous in that it does not require decedent to have used ordinary care for his own safety at the time he was killed. There is evidence from which the jury might conclude that he was guilty of contributory negligence although he may not have been sitting or lying on the track at the time. The jury might have reached the conclusion that the three eye-witnesses were mistaken as to the place where he was struck, and they might have reached the conclusion that he was not lying down on the track or sitting on the track, and yet from evidence in the record they may have reached the conclusion that he was not exercising proper care for his own safety. On another trial the court should excuse the appellants by the terms of the instruction if at the time Slusher was struck he was not exercising ordinary care for his own protection. It will be seen by an examination of this instruction that the jury was only required to believe that appellant, Black Star Coal Company, was guilty of some of the acts of negligence when they should have been required to believe from the evidence. It may be that the last sentence in this instruction which required the jury to find for the defendants unless they believed from the evidence as set out in the instruction cured this error. But on another trial the court should require the jury to believe from the evidence before they can find appellants or either of them guilty

of the acts of negligence complained of. Another error in this instruction is the assumption of a fact by the court in this language, "and that because of the failure to have said lights shining and throwing light the car ran upon and struck decedent at said place." After the word "failure" the court should have inserted "if you believe from the evidence there was any such failure." The second instruction is erroneous but was not prejujdicial to the Black Star Coal Company, as it related to the L. & N. R. R. Co. It does not require the jury to believe the things therein mentionel from the evidence.

On another trial the evidence may show such facts as would justify the jury in returning a verdict against the L. & N. R. R. Co., and if such should be true the second instruction should be given, modified, as suggested.

We reserve from this decision any opinion as to whether the verdict of the jury is flagrantly against the weight of the evidence.

The judgment of the lower court is reversed for proceedings consistent with this opinion.