## Commonwealth Life Insurance Company v. Pendleton et al.

(Decided November 19. 1929.)

592

COMBS & COMBS, BATSON, CARY & WELCH and H. W. BATSON for appellant.

HOWARD & MAYO for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Edgar Wallace Pendleton carried a life insurance policy with the Commonwealth Life Insurance Company, It was dated July 24, 1918, and by its terms the insurance company agreed to pay $2,000 to Nell Pendleton, the wife, and Alice Pendleton, the daughter, of Edgar Wallace Pendleton, upon receipt of due proofs of the death of the insured. The annual premium of $49.48 was payable in equal quarterly installments. Pendleton died on June 23, 1926, and forms for the proofs of death were requested. The insurance company denied liability and declined to pay the beneficiaries upon the ground that the policy of insurance had lapsed for nonpayment of the premium, and that the extended insurance automatically given by the contract had expired before the death of the insured. The beneficiaries brought this action against the insurance company and recovered a judgment for the amount of the policy, resulting in this appeal.

The contentions urged here are that the company was entitled to a peremptory instruction in its favor, or if not correct in that contention, that the verdict of the

jury was palpably against the evidence, upon which ground it should be awarded a new trial. The contract provided an automatic extension of the insurance for the full amount of the policy for one year and eleven months from the last anniversary of the policy, if premiums for three years had been paid, and for four years from the last anniversary of the policy, when premiums for five years had been paid. Pendleton died within the period of four years after the policy lapsed, and the issue between the parties is whether five annual premiums had been paid. If so, the plaintiffs were entitled to recover, but otherwise there was no liability. The beneficiaries rely upon proof of payments made to the insurance company and its general agent in excess of five full annual premiums and upon an admission by the company to the effect that five annual premiums had been paid. The company relies upon evidence to the effect that only eighteen quarterly premiums were actually paid and that its admission to the contrary was made by a mistake on the part of its agent. The parties agree that eighteen quarterly premiums were paid, so that the dispute is narrowed to the payment of two quarterly premiums. The plaintiff introduced proof of other payments made from time to time and the argument of the parties revolves around an analysis of this evidence. The testimony for the insurance company tends to prove that all these payments, except the eighteen quarterly premiums on the policy in suit, were applicable to other obligations of Pendleton. It is said that the evidence for the defendant is uncontradicted and completely overthrows the prima facie case made for the plaintiff, which the jury was not at liberty to disregard. It is true that the uncontradicted and unequivocal testimony of disinterested witnesses, who are not impeached, may not be arbitrarily disregarded. Barkley v. Bradford, 100 Ky. 306, 38 S. W. 432, 18 Ky. Law Rep. 725; Sinclair's Adm'r v. I. C. R. R. Co., 129 Ky. 828, 112 S. W. 910; Bannon v. Louisville Trust Co., 150 Ky. 401, 150 S. W. 510; Johnson's Adm'r v. Louisville & Interurban R. R. Co., 199 Ky. 524, 251 S. W. 843; Louisville & N. R. R. Co. v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078; Louisville & N. R. Co. v. Slusher's Adm'r, 217 Ky. 738, 290 S. W. 677. But the positive testimony of a witness may be contradicted by circumstances, Penick v. Metropolitan Life Ins. Co., 220 Ky. 626, 295 S. W. 900; Martyn v. Jacoby's Adm'r, 223 Ky. 674, 4 S. W. (2d) 684; and explanation by witnesses

of a prima facie case for the adverse party makes merely an issue for the jury, Ohio National Life Ins. Co. v. Cradock, 221 Ky. 821, 299 S. W. 964. An uncontradicted witness may be so evasive, equivocal, confused, or otherwise uncertain as to make his credibility essentially a question for the jury, Chesapeake & O. Ry. Co. v. Warnock, 158 Ky. 664, 166 S. W. 179; Moore on Facts secs. 66 to 131; and a jury is not even allowed, much less authorized, to rest a verdict on testimony at variance with well-established and universally recognized physical and mechanical laws, Louisville & N. R. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471; Louisville Water Co. v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916D, 300; Consolidation Coal Co. v. Potter, 182 Ky. 562, 206 S. W. 776.

The plaintiffs made out a prima facie case by showing payments to the company and its general agent sufficient to cover five annual premiums on the policy involved in the action, and by proving an admission of the company to the effect that such a number of premiums had been paid. The admission consisted in the payment by the company to Pendleton of three dividend coupons detached from the policy, coupled with a statement that two more coupons, which were not payable unless and until five full annual premiums had been paid, were not then due, but would be due respectively in April, 1923, and April, 1924. That action and declaration of the company tended to prove that the payments had been made as claimed by appellees. Proof of the payments actually made and the admission of the company respecting the dividend coupons were obviously sufficient to carry the case to the jury. The appellant insists, however, that it proved without contradiction that the payments proven by the plaintiff to have been made by Pendleton, except the admitted eighteen quarterly payments, were not applicable to the policy in suit, but were addressed to and applied upon other obligations of Pendleton. It also insists that its admission and the payment of the dividend coupons were the result of a mistake on the part of its agent, and that its proof entitled it to a peremptory instruction at the conclusion of all the evidence. The explanation of the proof of the several payments, and of the admission, constituted a defense to the plaintiff's prima facie case, but the truth of the explanations depended upon the credibility of the witnesses. The witnesses for the defendant were its general agent and vice president. The testimony as to the mistake in

paying the dividend coupons was but an inference of the witness deduced from the records of the company as to what actually had been credited. He had no personal knowledge of the matter. The man who made the mistake, if it was made, was not introduced. The alleged mistake was not discovered until after the death of Pendleton and after suit was filed upon the policy, and it is not conclusively proven that any mistake was made. It developed in the defendant's proof that in June, 1924, after the other two coupons had matured according to the company's letter to Pendleton, the company actually paid the coupons due in April, 1923, and in April, 1924. This circumstance constituted a further admission that the five annual premiums had been paid, as otherwise the coupons were not payable at all. The inference from the records, as they now appear, that the payment was made by mistake, would not arise if the records had been changed in the meantime, as the erasures thereon tend to suggest. It was explained that the erasures were merely actuarial notations, and without the significance attached to them by the plaintiffs.

The general agent, Patton, had many transactions with Pendleton. No record was kept of the account between them. Patton had paid premiums for Pendleton, and Pendleton had solicited insurance for Patton for which service payments had been made to him. Patton also made personal loans to Pendleton. Numerous transactions between Patton and Pendleton were involved, and as to some important details Patton was not positive or clear. He had an interest of his own to guard, and was not acting alone for his principal. It is difficult to believe that Pendleton would use his limited funds to pay personal debts that were not pressing and neglect of which involved no serious consequences at a time when the premiums upon which the validity of his insurance depended were due and demanding attention. A similar difficulty is encountered in explaining why Pendleton would reinstate the policy on January 16, 1923, only to permit it to lapse a week later, as the appellant now claims he did. There was room for the jury to find that the position of Patton was not entirely consistent respecting the validity of the insurance policy involved in the action. He testified that Pendleton had stated to him shortly before his death that the policy had lapsed, but he admitted that he and Mrs. Pendleton, after the death of Pendleton, and upon an inspection of the papers, both

thought the policy was in force. It was quite true that the policy had lapsed, but there is a distinction between the lapse of a policy for nonpayment of premiums, and extended insurance thereunder which continued in force for a term of years, notwithstanding the lapse of the policy. Pendleton, being an attorney, may have had the difference in mind when he made the statement attributed to him. The court concludes that the evidence for plaintiffs, and as a whole, was sufficient to take the case to the jury.

In disposing of the second question as to whether the verdict of the jury is palpably against the evidence, greater difficulty is encountered. The rule of practice prevailing in this state requires the submission of a case to the jury if there is any evidence tending to sustain the cause of action alleged, yet if a verdict is flagrantly and palpably against the evidence, the court may set it aside and grant a new trial. Chesapeake & O. R. R. Co. v. Johnson, 145 Ky. 481, 140 S. W. 687; second appeal 151 Ky. 809, 152 S. W. 962; Louisville & N. R. Co. v. Baker's Adm'r, 183 Ky. 795, 800, 210 S. W. 674; North Jellico Coal Co. v. Stewart, 173 Ky. 752, 191 S. W. 451; Illinois C. R. R. Co. v. Holmes, 196 Ky. 304, 244 S. W. 768; Dailey v. L. & E. R. Co., 180 Ky. 675, 203 S. W. 569.

Indeed, the Civil Code expressly authorizes (section 340, subsec. 6) the granting of a new trial if the verdict is not sustained by sufficient evidence, but further provides that no more than two new trials may be granted to a party upon that ground. Civil Code, sec. 341. If a scintilla of evidence is adduced, it is sufficient to carry the case to the jury, but it may not be sufficient to sustain a verdict for the plaintiff.

Except the eighteen quarterly premiums due upon the contract, all the payments are in dispute. Mrs. Pendleton produced a number of checks, but testified that she did not know what they were for except as shown on their face. There were four policies in the same company, and confusion occurred in the handling of the premium payments. Three of the checks introduced were payable to the agent, Patton, and are clearly shown to have been intended to reimburse him for the payment of the first annual premium. Pendleton had given his notes to Patton and the canceled notes were produced. We see no room for dispute as to the character of these three payments. There is conflict in the evidence as to the

$22.50 paid to Patton on November 9, 1921. The fourth note of the series given for the first premium had been paid on January 13, 1920, and it could hardly have been paid by the later check. The evidence very satisfactorily shows that the check for $110.91 given by Pendleton to the insurance company covered the quarterly premiums due on the policy in question, together with those due upon three other policies. The four policies had lapsed and that particular payment was made to procure a reinstatement of all of them. The checks for $158.75 and for $79.36 to Patton were not credited by the company. Patton testifies that they were used to reimburse him for payments made by him on other policies, and the circumstances tend to support his testimony. The failure to credit the payments is not conclusive, since payments to Patton were sufficient if they were intended to pay the premiums on this particular policy. Three other checks, one for $85.36, one for $88.60, and one for $89.19, are accounted for as payments on a $10,000 policy and a $1,000 policy held by Pendleton in the company. The evidence is conclusive that the check for $85.36 was so intended, and it is very persuasive that no part of the other two checks was applicable to premiums on the policy involved in this suit. But it was not indubitably shown that the checks for $88.60 and $89.19 might not have been applicable to the payment of premiums on the policy in question. A $30 check to Patton is claimed by him to be in payment of a loan, and there is little to indicate that it was applied or applicable to the insurance premiums, yet it might have been so intended. The vice president of the appellant had the company's original records and testified concerning them. He said that after the application for reinstatement signed by Pendleton was made, and the check for $110.91 was given, no additional payments of premiums were credited to him. Subsequent to the reinstatement of the policies, however, Pendleton attempted to collect the dividend coupons for the years 1918, 1919, 1921, 1922, and 1923. The company sent him a check in October, 1923, for three of the coupons, and advised him that the 1922 and 1923 coupons should be reattached to the policy as they would not be due until a date in April, 1924, and April, 1925, respectively. It is significant that the company, in October, 1923, did not mention that the five annual premiums had not been paid, since the fifth had fallen due and should have been paid on or before July 24, 1923. The company

argues that Pendleton was attempting to defraud it by sending in the coupons in October, 1923, but we see no basis for that contention. It was rather an assertion by him that he had paid five annual premiums and was entitled to collect the dividend coupons. The answer of the company, while the facts were fresh, confirms that assumption. Later, in June, 1924, after two more coupons according to the company's letter of October 15, 1923, had matured, Pendleton sent in the two dividend coupons covering the fourth and fifth years and again requested payment. In answer to the request the company on July 7, 1924, paid the two coupons. The vice president testified that, as no premium payments had been made after the reinstatement of the policies, the agent who made the payments did so inadvertently without carefully checking the records. The payment of the coupons was made a year and a half after the policy had lapsed for nonpayment of premiums according to the records of the company, as they then appeared, and the check must have been sent without any examination of the records. The only alternative inference suggested is that the record as to the value of the extended insurance may have been changed after the payment was made, as an erasure on the card might indicate. The evidence was such that the jury could have so found the fact. The company claimed it did not discover the error and raised no question until after the death of Pendleton. The amount, however, was but $18.75, and the failure to find it sooner is not conclusive that the error did not occur. Admissions against interest are always subject to explanation, but the truth of the explanation is for the jury to judge. Ohio Nat. Life Ins. Co. v. Cradock, 221 Ky. 821, 299 S. W. 964. The weight of the evidence as a whole favors the contention of the insurance company that less than twenty quarterly premiums were paid on the policy, and the court has concluded that the verdict to the contrary was palpably against the evidence. This conclusion does not conflict with the decision in Ohio National Life Ins. Co. v. Cradock, supra, where the admissions of the insurance company, coupled with the positive testimony of two witnesses that a contested premium had been paid, were held sufficient to sustain the verdict of a jury to that effect. But here the corroboration of the company's admission is not so positive and irrefragable as it was in that case.

Upon the considerations suggested the court is constrained to the conclusion that the appellant is entitled to a new trial.

Judgment reversed for a new trial not inconsistent with this opinion.

Whole court sitting.