# Louisville & N. R. Co. v. Alexander.

Dec. 13, 1938.

Rehearing Denied April 25, 1939.

J. B. Howard, Judge.

H. T. LIVELY, J. MILLER WHITE, A. F. BYRD and C. S. LAN-DRUM for appellant.

WILLIAMS & ALLEN, J. MOTT McDANIEL and S. S. WILLIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

There are two primary questions involved in this case. One is whether the action for damages for personal injuries was commenced within one year, the period of limitation, and the other whether an employee

of the appellant Railroad Company assumed the risk which resulted in his being injured. Other questions are whether the instructions were erroneous and the verdict of $10,000 excessive, but it is not necessary to decide them.

The plaintiff, now appellee, Robert Alexander, was injured while employed as a section hand in Fayette County in February, 1934. The petition alleges that he was a resident of Wolfe County where the defendant has railway lines. The petition bears the endorsements: "Filed August 27th, 1934, summons and copy issued to Franklin County. Attest A. B. Kash, Clerk. March 9, 1935, summons and copy to Jefferson County. Summons and copy to Breathitt County." The record contains copies of two summonses, one issued March 11th (the figure "11" being written above the figure "9" which has a line through it) to Breathitt County and served on the defendant's agent in Jackson on March 14, 1935. The other was issued to Jefferson County on March 9, 1935, and executed on March 21, 1935, on John M. Scott, Secretary of the defendant, "he being the chief officer found in this county at this time."

A general demurrer was filed April 12, 1935. Asserting a non-waiver, answer was filed the same day. This consisted of a traverse and pleas of contributory negligence and assumed risk. It was not until September 9, 1935, that the defendant filed an amended answer setting up the plea of limitations upon the ground that if any summons was issued to Franklin county on August 27, 1934, it was never served upon the defendant and no return thereof was ever made by any officer; that the summons was served upon its agent in Breathitt County on March 14th, but at that time there was no endorsement on the petition of such summons having been issued; that on March 21st the sheriff of Jefferson County received a summons and copy purporting to have been issued March 9th, but no endorsement was made on the petition until after March 18th. Jefferson County is the location of the defendant's chief office, that is, where it resides. It is alleged that the action was not begun until March 9, 1935, which was more than one year after the accident occurred which gave rise to plaintiff's cause of action. A motion to strike and a demurrer to this amended answer were overruled and the plaintiff denied the action was not commenced until March 18, 1935, or not within one year, and

averred that it was commenced August 27, 1934, by the filing of the petition and causing summons to be issued thereon in good faith on that date. It is to be observed no summons was ever issued to Wolfe County and no denial was made of the allegation that the defendant operated railroad lines in that county. It would appear that the issuance of the first summons to Franklin County was an error, but there is no evidence as to that or what became of such a summons. Nor is there any evidence tending to show it was not issued in good faith.

The company entered its appearance, so there is no question of jurisdiction. Section 73, Civil Code of Practice. The only question is whether the action is to be deemed as having been commenced within one year from the date of the injury. Section 39, Civil Code of Practice, defines the commencement of an action as the filing of the petition in the office of the clerk of the proper court and causing summons to be issued or warning order to be made thereon. Section 2524 of the Statutes, a part of the chapter dealing with limitations of actions, says:

"An action shall be deemed to have been commenced at the date of the first summons or process issued in good faith from the court or tribunal having jurisdiction of the cause of action."

The record shows a summons was issued. As the suit was brought in a proper court in time, merely because the summons was issued against the defendant to a county where it did not reside but where it did have an agent, it seems to us it would be unjust to hold that it was caused to be issued in bad faith. Appellant relies on Durrett v. Rider's Adm'x, 219 Ky. 695, 294 S. W. 156. It was therein held that the running of the statute was not stopped by the issuance of the summons and could have been stopped only by its service upon the defendant. The case is distinguishable in that the defendant there could not be sued properly out of his own county unless a summons was actually served upon him, while here this defendant could be sued in Wolfe County because it is a common carrier and the plaintiff resided in that county. Section 73, Civil Code of Practice. Had the summons been served in Franklin County it probably would have been quashed, but the good faith of the plaintiff would not necessarily have been impugned. See Louisville & N. Railroad Company v. Bowen, 39 S. W. 31, 18 Ky. Law Rep. 1099; Louisville

& N. Railroad Company v. Hall, 115 Ky. 567, 74 S. W. 280, 24 Ky. Law Rep. 2487. We think the action was commenced in time.

The plaintiff grounded his case upon three allegations of negligence, namely: (1) The employer did not furnish him a reasonably safe place in which to work; (2) or a sufficient force; and (3) that what he did was by direction and under the immediate supervision of his foreman.

The plaintiff is an experienced section hand. At the time he was injured he and his crew were engaged in taking out old and putting in new switch ties. Such work is called "tailing." According to the customary method, new ties were strung along the right of way; the old ones were pulled from under the rail; the new ties would be thrown to the immediate point, and then dragged and pushed under the rails. It was conclusively shown that four men were customarily used in putting in the switch ties, which are in some instances twice as long as the ordinary cross-tie. The ties being handled at the time plaintiff was injured were 13 or 14 feet long and there were only three men immediately at hand. They were working in what one witness described as "tough mud." It was very slippery. In getting a tie to the rail the plaintiff and one other man would pick it up and throw it and then jump back to avoid the bounce. While so engaged in lifting or putting in a heavy tie, Alexander was badly ruptured. It is not made clear whether when he felt the first cutting pain he was lifting the tie to throw it or was pushing it under the rail with two men pulling it with tongs. It was customary to furnish two men to pull and two to push such large ties under the rails. The foreman had instructed him to "go tail the tie," and he made no complaint and asked for no assistance. Asked why he came to pick up the end of the tie by himself the plaintiff answered: "My foreman told me and I went ahead and minded him." He took no thought of danger. He had tailed five, six or seven such ties before another man came to help him. Several section foremen and workmen of many years' experience testified that four men usually handled such heavy ties in doing this kind of work. As stated, there were only three of them here. It appears that two men were nearby engaged in similar work. The foreman was present.

Though the muddy and slippery condition of the

ground where the men labored made the work more·difficult, it seems to us if that should be regarded as making an unreasonably safe place, still it was not the cause of plaintiff's injury. He over-strained himself while lifting a heavy timber.

The case was submitted to the jury under an instruction patterned after that approved in Illinois Central Railroad Company v. Langan, 116 Ky. 318, 76 S. W. 32, 25 Ky. Law Rep. 500, in which a workman was injured while engaged in handling heavy steel shafting. The action was predicated, as it is here, upon the failure of the master to furnish a sufficient number of men with which to do the work. Where that is proven, the servant injured does not assume the risk. But the facts are different. In that case while the crew were so engaged they remonstrated because of the danger in attempting to move the larger shafts, and requested their immediate superior to obtain assistance. He told them to go ahead. The shaft they were carrying slipped or was dropped from the hands of the carriers and fell on the plaintiff's foot, severely injuring it. The injury to this plaintiff, Alexander, was not caused by the weakness or act of the other men. It was due to his own insufficient strength for the task. He was ruptured while under the strain of lifting one end of a heavy switch tie or while pushing it under the rail. It seems to the court that this case comes within the rule that as a man is the best judge of his own physical strength, if he undertakes to lift a load heavier than he is able to bear and is thereby injured, he assumes the risk and cannot shift responsibility for his mistaken judgment on to the master. Chesapeake & O. Railroad Company v. Music, 243 Ky. 491, 49 S. W. (2d) 311. In the recent case of Nashville, C. & St. L. Railway v. Cleaver, 274 Ky. 410, 118 S. W. (2d) 748, we extensively reviewed cases of this character. There an experienced railroad bridge workman was ruptured while assisting in carrying a heavy timber after having remonstrated and being ordered by his foreman to go ahead. It was held that he assumed the risk and could not recover damages from the employer. The only difference in the two cases is that here there was a passive compliance with a general direction to do the job, consequently a more apparent assumption.

The legislature in 1918 withdrew the defense of assumed risk in actions by employees of common carriers for damages for injuries sustained while engaged in

commerce where the violation of any federal or state statute enacted for the safety of employees had contributed to the injury. Section 820b-3, Kentucky Statutes. But that statute has no application here. Chesapeake & O. Railway Company v. Music, supra. Until the legislature shall enact a similar protective statute to cover such a situation as this, the courts are bound by the common law rule of assumption of risk.

Under the authority of Nashville C. & St. L. Railroad Company v. Cleaver, supra, the court is constrained to hold that a peremptory instruction for the defendant should have been given.

Judgment reversed.