## Louisville & N. R. Co. v. Smith.

Oct. 7, 1941.

J. J. Tye, H. L. Bryant, J. Miller White and H. T. Lively for appellant.

Zeb A. Stewart, C. R. Luker and J. Milton Luker for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Louis Smith brought this action against the Louisville & Nashville Railroad Company to recover damages for an injury he sustained while letting down the bottom of one of the Company's coal cars. The Company's mo-

tion for a peremptory instruction at the conclusion of Smith's evidence was overruled and relying upon that motion it offered no evidence. The trial resulted in a judgment in Smith's favor in the amount of $3,000.

In urging reversal the Company insists that (1) a peremptory instruction should have been given in its favor at the conclusion of Smith's evidence, since there was a failure of proof of negligence on the part of it or its agents; (2) Smith assumed the risk of his employment; (3) he was guilty of contributory negligence as a matter of law; (4) the trial court erroneously instructed the jury; (5) the verdict is contrary to the law and instructions of the court; and (6) incompetent evidence was admitted.

The first paragraph of Smith's petition charged that the car upon which he was working was permitted "to be and remain out of repair, and in an unsafe and dangerous condition, and with unsafe and dangerous and defective equipment." The second paragraph, to which a demurrer was sustained, charged that he was compelled to undergo an operation at the hands of surgeons selected by the Company, and those surgeons negligently, carelessly and unskillfully performed the operation. Evidence was admitted as to the condition of the place at which Smith was working at the time he sustained his injury, but since there was no allegation of an unsafe place to work we will disregard that testimony.

We have examined the record very carefully and have reached the conclusion that the Company's motion for a peremptory instruction should have been sustained, since we find no proof of negligence on its part, or that of its agents. Having reached this conclusion it is unnecessary for us to discuss other grounds urged for reversal, and we reserve an opinion on them, except as hereinafter set out.

Smith was employed by the Company as a day laborer at its yards in Corbin for about 15 years. He was 47 years of age when he was injured in 1938. For about a year prior to that time he had been assisting in the work of cleaning coal cars. This work was done by letting down the doors at the bottom of the cars and sweeping the trash from within them. The doors were let down by the use of a lever or wrench weighing some 25 pounds and about three or four feet in length, and with

an eye in one end of it. Smith and a man by the name of Poynter and two others had been told by the foreman to clean cars. Poynter testified that the foreman told him and one of the other boys to wind the doors and Smith and the other boy to knock the doors, and that Smith asked him which he wanted him to do and he told him to sweep. On this point Smith testified that the oldest man had the preference of pulling the doors down, and that since he was the oldest man in the crew he selected that job. He was on one side of the car with a wrench and Poynter was on the other side.

As to the manner in which he sustained his injury, Smith testified on direct examination:

"A. When come here to latch, if the car is in first class shape, when you knock this dog up (showing in his exhibit) this car has not got what we call a safety, when we knock this up, this lets the door down like this (showing on his exhibit), put the wrench on and turn it a little, but this door didn't drop down, so I swung on the wrench and the end of it hit me in the right groin."

He said that he had done this particular type of work before and that no other door had hung like the one in question did. When asked on cross examination what caused the lever to hit him in the side, Smith said, "It was a foul link in the chain." As to what he meant by this statement he testified further:

"A. The rod that goes over there, under the bottom of the car, this chain runs between this rod and runs across there, and winds between this and the bottom of the car (shows on his exhibit) then it runs up the edge there under the flat cog, then down to the bottom rod, and this wrench fits over this has a square eye, I pulled down on it to unwind it and the wrench struck me.

"Q. 19 Is it unusual for a chain to kink or to get turned up a little like you said that one did in dropping the doors to clean them? A. No, sir.

"Q. 19½ And after that kink is broken, would they operate alright? A. Yes, sir.

"Q. 20 Now did the wrench come off? A. No, sir, it stayed on the end of the rod.

"Q. 21 In other words, the rod was tight enough, so that when you were pulling on the wrench it didn't drop off? A. No, I was pulling so hard on it the end of the wrench hit me in the side.

"Q. 22 After the kink came out of the chain did it work easy? A. Yes, sir.

"Q. 23 You were the only person that was operating that rod? A. Mr. Poynter, was on the other side."

As to the kink in the chain, Poynter testified that he let the door down after Smith was injured and thereafter it worked all right and he did not send the car to the shop because there was nothing wrong with it. He testified also that it was not unusual to find a link kinked or turned up, and it was part of the duty of those letting down the doors to straighten out such kinks. Smith, Poynter and another witness testified that when a car was found that was not in good shape, they put a shop tag on it. No shop tag was placed upon the car in question.

As heretofore indicated, all of the evidence to which we have referred was introduced by Smith. Viewing it in the most favorable light for him, we fail to see how it substantiates his charge of negligence in permitting the car "to be and remain out of repair and in an unsafe and dangerous condition, and with unsafe and dangerous and defective equipment." When Smith applied his lever to the rod it did not turn as it should have. The evidence shows clearly that the cause of this was that there was a kinked link in the chain. This is not uncommon and Poynter testified that it was the duty of those dropping doors to straighten out the chain when kinks were found. Men doing work such as Smith and Poynter were doing placed shop tags on cars when they found them out of order. The record shows that cars with only kinked links were not sent to the shop.

As pointed out in the case of Equitable Life Assurance Society v. Spencer, 262 Ky. 478, 90 S. W. (2d) 704, it is the rule in this jurisdiction that, where the facts of a case are undisputed and but one legitimate inference can be drawn from them, the court and not the jury should determine their effect. See, also, Louisville & N. R. Co. v. Slusher's Adm'r, 217 Ky. 738, 290 S. W. 677, and Commonwealth Life Ins. Co. v. Pendleton, 231 Ky.

591, 21 S. W. (2d) 985, 66 A. L. R. 1526. As we have already indicated, it is our view that the facts in this case do not support the allegation that Smith was injured because of negligence of the Company in permitting the car to remain in an unsafe condition.

When Smith applied the lever to the rod and it did not give as it should have he knew, or should have known, that there was something wrong with the rod or chain. Instead of attempting to ascertain the trouble he "swung on the wrench." How this caused the wrench to hit him in the right side is not explained other than as he said on cross examination, "I was pulling so hard on it the end of the wrench hit me in the side." It is a well established rule in this jurisdiction that a servant assumes the ordinary risks incident to his employment, and also the extraordinary risks where they are so obvious that an ordinarily careful person would observe them and appreciate the consequent danger. Nashville, C. & St. L. Ry. Co. v. Cleaver, 274 Ky. 410, 118 S. W. (2d) 748; Louisville & N. R. Co. v. Alexander, 277 Ky. 719, 127 S. W. (2d) 395. It is not unreasonable to assume from Smith's own statements that he overtaxed his strength by pulling on the wrench. We do not gather from the record that the normal performance of the work which Smith was called upon to do required any unusual amount of strength, but rather the contrary seems to have been the case.

Under the circumstances we think the judgment should be and it is reversed, with directions that it be set aside and for proceedings consistent with this opinion.